**NELLO L. TEER COMPANY**

v.

**The UNITED STATES.**

**No. 274-59.**

United States Court of Claims.

July 16, 1965.

Whitaker, Senior Judge, dissented.

Paul M. Rhodes, Washington, D. C., for plaintiff. Joseph C. Wells, Washington, D. C., and Lawrence T. Zimmerman, Washington, D. C., of counsel.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE and DAVIS, Judges, and WHITAKER, Senior Judge.

DURFEE, Judge.

This action is maintained by a successful contractor of a reservoir project. The dispute involves the determination of the question of whether or not plaintiff was rightfully required to pay rates of wages to power equipment operators under a wage determination by the Department of Labor, that were higher than the wage rates plaintiff believed should be paid.

The contract out of which this suit arose was made with the United States Army Corps of Engineers and was awarded to plaintiff as lowest bidder on April 26, 1957. It called for the construction of an embankment and spillway, and for the completion of outlet works for the Bear Creek Reservoir, Lehigh River, Carbon and Luzerne Counties, Pennsylvania.

The following brief history of union and bargaining activity and construction work in this geographical area, prior to the date of the contract, blends in with this controversy.

Prior to the award of the contract, two labor unions representing power equipment operators were active in that portion of Pennsylvania which includes Carbon and Luzerne Counties. One of these was an industrial union affiliated with the United Mine Workers, and will be referred to as District 50. The other was a craft union affiliated with the American Federation of Labor, and will be referred to as the AFL Operating Engineers.

Historically, there were three types of construction in the area represented by these unions, "Building Construction," "Highway Construction" and "Heavy Construction." "Building Construction" concerned the erection of shelters and included virtually every kind of a structure having a roof over it. "Highway Construction" concerned the building of roads and highways, including grading and more extensive earth moving, and the installation of drains, culverts and bridges. "Heavy Construction" concerned large earthmoving and concrete or concrete and steel installations, such as dams (including embankments and spillways), airports and other large undertakings not related to the other two categories.

By 1956–1957 the AFL Operating Engineers Union had made some headway in an effort to equate wage rates for Heavy Construction with wage rates for the traditionally higher Building Construction. However, the union had not blanketed the Carbon and Luzerne Counties area with the higher rate. District 50, the United Mine Workers affiliate union, confined itself to the fields of Heavy Construction and Highway Construction. For these two categories, District 50's rates for power equipment operators were identical and were comparable to the AFL Operating Engineers' rates for Highway Construction.[1]

It was the predominant practice in the two county area to pay workmen, including power equipment operators employed in Heavy Construction, and those engaged in Highway Construction, wages according to the wage scale established by the AFL for Highway Construction, and the scale established by District 50 for Heavy and Highway Construction. There was, however, a dam project in the area where power equipment operators were paid the higher AFL rates for Building and Heavy Construction. This project was the first Bear Creek contract for the outlet works which was awarded in 1956 to the Gasparini Construction Company, an AFL contractor.

1. District 50 had negotiated a master contract with the Associated Pennsylvania Constructors, a trade association engaged in Highway and Heavy Construction. Plaintiff was a member of Associated Pennsylvania.

With this background in mind we turn to the facts of this controversy. On January 11, 1957, the Corps of Engineers requested the Department of Labor to make a "determination of the wage rates to be paid laborers and mechanics" on the construction at Bear Creek for the "entire schedule" of crafts in contemplation of the invitation for bids on the contract in suit. This was in accordance with the Davis-Bacon Act, 40 U.S.C. § 276a (1952 ed.) which required the payment of wages " * * * computed at * * * rates not less than those stated in the advertised specifications * * " as having been " * * * determined by the Secretary of Labor to be prevailing * * * on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State * * *." The Department of Labor responded on January 17, 1957, with Wage Decision No. R–10,416. The invitation for bids on the contract was issued on March 1, 1957 by the Corps of Engineers. Wage Decision No. R–10,416 was incorporated as part of Paragraph SC–17[2] of the Special Conditions.

On March 6, 1957, the Corps of Engineers requested the Department of Labor to make another wage determination for the project. In the request, the Corps of Engineers certified to the Department of Labor that no highway type work requiring the use of power equipment would be involved. This certification was in error, as in actuality a minor portion (4 percent) of the project work was highway-type construction. The De-partment of Labor responded on March 11, 1957, with Wage Decision No. R–13,689. On March 18, 1957, the Corps of Engineers issued Addendum No. 1 to the invitation for bids, substituting Wage Decision No. R–13,689 for Wage Decision No. R–10,416, and directing bidders to acknowledge its receipt prior to opening of bids.

The similarities and differences of these two wage decisions pertinent to the problem in the case at bar are as follows: (a) Both had sections under the heading "Heavy and Highway Construction." Neither decision listed power equipment operators under this heading; (b) Both had sections entitled "Building and Heavy Construction," under which was listed "power equipment operators" followed by 35 separate crafts. These sections were identical; (c) A section of the first decision, Decision No. R–10,416, carried the heading "Highway Construction" under which was listed "power equipment operators" followed by 27 crafts. Decision No. R–13,689 omitted this section; (d) The rates for power equipment operators under "Highway Construction" in Decision No. R–10,416 were lower than rates for power equipment operators listed under "Building and Heavy Construction."

Prior to submitting its bid plaintiff's president and engineers inspected the work site and made an inspection of working conditions, labor practices and prevailing wages. They reasonably concluded that power equipment operators engaged in the type of work called for in

2. Paragraph SC–17 of the Special Conditions of the contract provided as follows:
SC–17 RATES OF WAGES:
(a) The minimum wages to be paid laborers and mechanics on this project, as determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the pertinent locality, are as set forth below.
(b) Any class of laborers and mechanics not listed below employed on this contract shall be classified or reclassified conformably to the schedule set out below by mutual agreement between the contractor and class of labor concerned, subject to the prior approval of the Contracting Officer. In the event the interested parties cannot agree on the proper classification or reclassification of a particular class of laborers and mechanics to be used, the question, accompanies [sic] by the recommendation of the Contracting Officer, shall be referred to the Secretary of Labor for final determination.

the project, "Heavy construction" work,[3] were to be paid a rate of wages lower than the scale of wages sometimes paid to the same operators when engaged in the Heavy Construction work incidental to Building Construction. Plaintiff's bid was prepared on the basis of the foregoing. The bid was submitted on April 9, 1957. At the appropriate place therein, plaintiff acknowledged receipt of Addendum No. 1. The contract was awarded to plaintiff on April 26. On April 30, plaintiff entered into a contract with District 50, establishing wage rates for power equipment operators identical with the rates for "Heavy and Highway Construction" then in force through the master contract between the union and Associated Pennsylvania Constructors (see footnote 1).

Thereafter, the controversy arose. Plaintiff maintained that the applicable class of power equipment operators had been omitted from Wage Decision No. R-13,689. Plaintiff contended that the power equipment operators should be paid under the heading "Heavy and Highway Construction."[4] Plaintiff made a request for authorization of additional classifications and rates, as contemplated by subparagraph (b) of Paragraph SC-17 of the Special Conditions (see footnote 2). The contracting officer denied the request by letter of May 23, 1957, stating that plaintiff was in effect requesting a reduction in the applicable minimum rates, rather than additional classifications.

Plaintiff replied to the contracting officer, stating that it had assumed, in accordance with the general practices of the industry, that the applicable rates would be those under "Heavy and Highway" and not "Building and Heavy." Plaintiff, therefore, believed there was an omission as contemplated by Paragraph SC-17(b) of the Special Conditions. The contracting officer rejected the argument, and directed plaintiff to pay the power equipment operators the rates listed under the heading "Building and Heavy Construction." Plaintiff was advised that if it continued to disagree, the question would be submitted to the Secretary of Labor for final determination in accordance with Paragraph SC-17(b) of the contract. Plaintiff then replied to the contracting officer that it continued to disagree, and further, that Paragraph SC-17(b) was not applicable to the dispute at hand, the dispute being whether or not there was an omission from the Wage Decision of the wages to be paid the power equipment operators. It was plaintiff's initial position that Paragraph SC-17(b) would be applicable only if both parties agreed there was no determination of the minimum wages included in the Wage Decision. Plaintiff maintained this dispute was subject to the general disputes provision of the contract, and therefore, appealable to the Corps of Engineers and not the Secretary of Labor. Plaintiff therefore appealed the decision to the Chief of Engineers.

The contracting officer then wrote the Chief of Engineers recommending that the dispute be processed under the provisions of Paragraph SC-17(b) of the contract and Paragraph 5.6(c) of the Regulations, Part 5, and final determination be made by the Secretary of Labor. Plaintiff vigorously objected to this recommendation.

The Office of the Chief of Engineers forwarded the question to the Solicitor of Labor. The letter of July 30, 1957 read as follows:

"A question has arisen * * * whether the Department of Labor Decision No. R-13,689 contains the classification and wage rates which were the subject of the contractor's request for additional classifications.

"Although this is not a question as to the proper classification or

---

3. The parties are agreed that the work required by the contract in suit was "Heavy Construction."

4. As will be remembered, neither the first nor second wage decision had any power equipment operators listed under that heading.

rates to be considered in accordance with SC–17 of the contract and Section 5.6(c) of Regulations, Part 5, the enclosed material is being referred to your office for a ruling or an interpretation to Section 5.11 of Regulations, Part 5."

By letter of August 26, 1957, the Solicitor of Labor concurred in the contracting officer's decision of May 23, 1957. Plaintiff was then directed by the contracting officer to pay the higher rates, i. e., the rates for power equipment operators listed under the heading "Building and Heavy Construction."

Plaintiff then appealed to the Chief of Engineers. The Corps of Engineers Claims and Appeals Board dismissed the case on the ground that the dispute in question was solely within the province of the Secretary of Labor.

Plaintiff has made full restitution to the employees whose wages had been computed at the lower union contract rates for "Highway and Heavy Construction" rather than at the minimum rates set forth in Wage Decision No. R–13,689 for "Building and Heavy Construction." Plaintiff now seeks recovery of the difference between the wages actually paid by it to its power equipment operators and the lower wages it would have paid these employees if it had been permitted to apply the rates it agreed to pay the union.

■ The question before us—the ultimate issue in the case—is whether or not the Secretary of Labor made a determination of the rates to be paid to power equipment operators under the contract. We believe that there was such a determination; that it was embodied in Wage Decision R–13,689 which was made a part of the contract; that under United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954), we cannot review the correctness of the determination, and therefore that plaintiff was rightfully required to pay the operators the rates listed under the heading "Building and Heavy Construction."

Plaintiff contends the power and equipment operators were engaged in "Heavy and Highway Construction" or in "Highway Construction," (the two being identical for wage purposes according to plaintiff), as those terms were understood at the locale of the work at the time of the bidding. Plaintiff therefore emphasizes the fact that the Corps of Engineers erroneously certified to the Department of Labor in requesting the second wage decision that no highway work requiring the use of power equipment would be used. As a result of the certification, the heading "Highway Construction," (which contained rates for power equipment operators) was deleted from the second wage decision. Plaintiff concludes that since there was no classification of power operators under the heading "Heavy and Highway Construction" in the second wage decision, and since the heading "Highway Construction" which contained a classification for power operators had been deleted, then there was an omission of power operators under the second wage decision.

While this argument seems plausible at first glance, it must be remembered that even though the terms "Highway Construction" and "Heavy Construction" were more *nearly* synonymous in labor parlance in the two-county area than the terms "Heavy Construction" and "Building Construction," the fact remains that plaintiff consistently [5] took the position that the omission occurred under the heading "Heavy and Highway Construction." Plaintiff never attacked the propriety of deleting the "Highway Construction" heading which contained a listing for the power equipment workers.

---

5. Finding of Fact 19(a)—Plaintiff's letter to the contracting officer, May 23, 1957: "We have assumed * * * the rates paid would be paid * * * under the general classification 'Heavy and Highway Construction' * * *." See also Finding 19(d), plaintiff's letter of June 14, 1957, and Finding 21(c), plaintiff's letter of September 10, 1957, both of which read in the same tenor.

It is true that under plaintiff's union contract, the District 50 rates for power operators were the same for both "Highway" and "Heavy," and that it was the predominant practice in the area to pay the lower scale to power equipment operators. However, these facts should not obfuscate the fact that in *neither* the first nor second wage decision was there any classification for power equipment operators under the heading "Heavy and Highway Construction." Plaintiff has not contended that the deleted "Highway" rates were the rates that should have been paid the operators under the contract. The rates plaintiff sought to apply,—the union rates,—were similar to the deleted "Highway" rates contained in the first wage decision, but were not identical. We therefore fail to see how the omission of the heading "Highway Construction," even though erroneously made, affects plaintiff's contention that there was an omission of power equipment operators under the heading "Heavy and Highway Construction" in the second wage decision.

■ Our belief that there was a determination of rates for power equipment operators by the Secretary of Labor is predicated upon our belief that the resolution of the dispute involved was within the realm of power given to the Secretary of Labor to settle wage disputes of this kind pertaining to his pre-contract wage decision. Paragraph SC–17(b) of the contract (see footnote 2) describes the applicable procedure for the resolution of such a dispute. Plaintiff contends that Paragraph SC–17(b) *is applicable* only when the *"interested parties" are unable to agree* there was an omission. According to plaintiff, the "interested parties" mean only the contractor and laborers. In other words, plaintiff reasons that Paragraph SC–17(b) comes into play only when the contractor and laborers cannot agree on a proper classification. Plaintiff says that here the contractor and the laborers were in agreement, as evidenced by the labor contract, and therefore defendant breached the contract by submitting the

question of omission to the Secretary of Labor for final determination under Paragraph SC–17(b) of the contract.

We find plaintiff's construction of the term "interested parties" indeed a strained one. Plaintiff has cited us no authority for the proposition that an interested party in a Government contract does not include the Government. We cannot think of any situation where the Government would not be an interested party in one of its contracts. Further, plaintiff did not interpret *"interested parties"* in this manner in its objections to the contracting officer's ruling. At that stage of the proceedings plaintiff seemed to recognize the fact that the Government was an interested party. We therefore conclude that "interested parties" means the Government and the contractor, as applied to the facts in this case, and shall confine our discussion of Paragraph SC–17(b) to these parties.

■ Plaintiff's alternative argument on the construction of Paragraph SC–17(b)—the position taken before the contracting officer and the Corps of Engineers Claims and Appeals Board—will now be considered—plaintiff having failed to persuade us to adopt its interpretation of *"interested parties."* Plaintiff took the position before the contracting officer and the Board that when there can be *no agreement* on the question of whether or not there was an omission from the wage decision, a dispute resolvable only under the disputes clause of the contract has arisen. Such a dispute would be appealable to the Chief of Engineers and not the Secretary of Labor. Plaintiff therefore maintained that the contract was breached when the contracting officer submitted the question of omission from the wage decision to the Secretary of Labor for final determination. We disagree with plaintiff. We do not believe there is a condition precedent, i. e., an agreement that an omission actually exists, attached to final resolution of wage disputes by the Secretary of Labor under Paragraph SC–17(b) of the contract. In other words, we believe that the Secretary of Labor

had the power not only to finally decide the proper classification for omitted classes, but also the power to decide whether or not a class had been omitted. The Corps of Engineers Claims and Appeals Board was of the same opinion. (See finding 22). This approach is more than practical; it is one of common sense. If a person or a body has the authority to make a decision, who is in a better position to know whether the decision was made than that person or body? Plaintiff must therefore shoulder the burden to prove, or at least present some evidence that such a decision was not made. Since plaintiff has not done so in this case, we defer to the Secretary's ruling that the determination of rates for power equipment workers was included in the second wage decision.[6] Since the correctness of the wage determination is not subject to judicial review, United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954), plaintiff is not entitled to recover.

The pertinent statutes and regulations support our interpretation of Paragraph SC–17(b) of the contract. With respect to the Davis-Bacon Act, Reorganization Plan No. 14 of 1950 [64 Stat. 1267 (1950); 5 U.S.C. § 133z–15 note (1958 ed.)] required that the Secretary of Labor " * * * shall prescribe appropriate standards, regulations, and procedures, which shall be observed by these agencies, and cause to be made by the Department of Labor such investigations, with respect to compliance with and enforcement of such labor standards, as he deems desirable, * * *."

As a result of the foregoing, the following Regulation was issued by the Secretary of Labor; 16 F.R. 4431–4432 (1951), [also contained in 29 CFR § 5.6 (1964 ed.)]:

"(c) Under the Davis-Bacon Act the contracting officer shall require that any class of laborers and mechanics not listed in the Secretary's decision, which will be employed on the contract, shall be classified or reclassified by the contractor or subcontractor conformably to the Secretary's decision and a report of the administrative action taken in such cases shall be transmitted by the agency to the Secretary of Labor. In the event the interested parties cannot agree on the proper classification or reclassification of a particular class of laborers and mechanics to be used, the question, accompanied by the recommendation of the contracting officer, shall be referred to the Secretary of Labor for final determination. * * * "

The similarity between this regulation and Paragraph SC–17(b) of the contract is quite obvious. Paragraph SC–17(b) is almost a verbatim recital of the Regulation.

The other pertinent Regulation, § 5.11, contained in the same part as § 5.6, is an all-encompassing one and reads as follows: [16 F.R. 4432 (1951) [also contained in 29 CFR § 5.11 (1964 ed.)]]

"All questions arising in any agency relating to the application and interpretation of the regulations contained in this part and of the Davis-Bacon Act, * * * shall be referred to the Secretary of Labor for appropriate ruling or interpretation. The rulings and interpretations of the Secretary shall be authoritative * * *."

Thus, the interpretation of any regulation contained *"in this part"* [emphasis supplied] shall be referred to the Secretary of Labor for final ruling or

---

6. Apparently, the Secretary's second wage decision (as well as his first) adopted the AFL union's nomenclature, rather than the District 50 nomenclature, and also adopted the higher wage rate which the AFL was attempting to maintain for power equipment operators engaged in heavy construction. See findings 10, 12

(d), 20(a). Accordingly, we read the Secretary's decision, on referral from the Corps of Engineers, as determining that the second wage decision had included power equipment operators engaged in heavy construction (like plaintiff's) under the heading of "Building and Heavy Construction."

interpretation. Therefore, § 5.6 of the Regulations promulgated by the Secretary is subject to interpretation or ruling by the Secretary. As we have shown, § 5.6 is the basis or authority for insertion of Paragraph SC–17(b) in the contract. An interpretation of § 5.6 would, therefore, be an interpretation of Paragraph SC–17(b), and within the power of the Secretary specifically under § 5.11.

It was specifically under § 5.11 that the problem at hand was forwarded by the Chief of Engineers to the Secretary, [see finding 20(d)], and under which the Secretary rendered a decision agreeing with the contracting officer.

Plaintiff has made much of the fact that the Chief of Engineers stated in the letter to the Secretary that this was not a question of the "* * * proper classification of rates to be considered in accordance with SC–17 of the contract and Section 5.6(c) of the Regulations, Part 5 * * *." Obviously, the Chief of Engineers (whose opinion was merely advisory, he having no authority to decide the problem), was partially mistaken in his interpretation of the law. In any event, the Chief of Engineers was correct in forwarding the problem to the Secretary under § 5.11, and the decision of the Secretary under § 5.11 was final. We so hold. Accordingly, plaintiff's petition is dismissed.

COWEN, Chief Judge, concurs in the result.

WHITAKER, Senior Judge (dissenting).

In the locality where the work called for in the contract in this case was to be done, there were two labor unions who employed operators of power equipment, the American Federation of Labor and the United Mine Workers. The American Federation of Labor employed them either on work which it denominated "Building and Heavy Construction" or on "Highway Construction." The United Mine Workers employed them either on what it called "Heavy and Highway Construction" or on "Highway Construction." Operators belonging to the American Federation of Labor engaged in "Building and Heavy Construction" received higher wages than those engaged in "Highway Construction." However, operators belonging to United Mine Workers received the same wages whether employed in "Heavy and Highway Construction" or in only "Highway Construction."

The work called for by the contract in this case was classified by the American Federation of Labor as "Building and Heavy Construction," but, by the United Mine Workers, as "Heavy and Highway Construction."

When the Secretary of Labor issued his original determination, he fixed the wages for these operators engaged in "Building and Heavy Construction" and in "Highway Construction," but not for "Heavy and Highway Construction." He fixed the wages for a number of the crafts and laborers engaged in "Heavy and Highway Construction," but omitted operators of power equipment, although they were necessarily employed in such work; it could not be done without them.

His second determination omitted "Highway Construction" altogether, because of the erroneous information given him that no highway construction was involved. Nor did he fix the wages for these operators engaged in "Heavy and Highway Construction."

On account of this omission, the contractor agreed with the union on the wages to be paid them, as he was authorized to do under section 17(b) of the Special Conditions, quoted in footnote 2 of the majority opinion. The contracting officer refused to approve this contract.

There was no justification for this. The reason his approval of such a contract was required was not stated, but it could only have been to insure that workers on the contract were paid the prevailing wages. There is no doubt that the wages stipulated in the contract were the prevailing wages being paid operators engaged in "Heavy and Highway

Construction," if they belonged to the United Mine Workers Union, but not for American Federation of Labor operators. But the findings show that on all but one of the projects similar to the one here involved, operators belonging to the United Mine Workers were being employed and were being paid its scale of wages. On only one small project of a similar nature were American Federation of Labor operators being paid the scale for such operators engaged in "Building and Heavy Construction."

There was, therefore, no justification for the contracting officer to disapprove the contract plaintiff had made with the union. It follows that the Chief of Engineers should have reversed the contracting officer and should have approved the contract. Instead, he referred the matter to the Secretary of Labor. If there was any doubt in his mind about the wages fixed in the contract being in accord with the prevailing wages, this was the proper procedure; but I do not see how there could have been any doubt in his mind about this. But since the Secretary of Labor was the person to determine the prevailing wages, I doubt if I would be justified in saying that the Chief of Engineers was without authority to refer the matter to the Secretary of Labor. I, nevertheless, think that the Secretary of Labor's determination disregarded the facts and was based not on what actually were the prevailing wages but upon what he thought the prevailing wages ought to be. He had no right to classify operators of power equipment engaged in work similar to the contract work as operators engaged in "Building and Heavy Construction" since, on the large majority of the work being done in this locality, operators of power equipment on similar projects were employed under the United Mine Workers' scale applicable to operators employed on "Heavy and Highway Construction." There was only one small contract in this locality on which these operators were paid the wages specified for them under "Building and Heavy Construction." To have singled out this one small contract

for less than a million dollars as establishing the prevailing wages, and to have ignored the others on which many times as many contractors were involved and which involved many millions of dollars, was arbitrary and capricious. "Prevailing" means, "most frequent," "generally current."

Is such a decision final and conclusive? The majority says it was, under the decision of the Supreme Court in United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954). In that case the Supreme Court did say that the decision of the Secretary of Labor was not subject to judicial review, but this was not necessary to a decision of the case. It was said only in passing. The issue in the case was whether or not the contractor had a right to rely upon the determination of the Secretary of Labor that the wages fixed by him were the prevailing wages. No question was raised about the finality of the Secretary's determination. The only issue was whether or not it constituted a representation upon which the contractor had a right to rely.

The Supreme Court did not elaborate its statement that his decision was final. It merely made the statement and then passed on to a discussion of issue in the case. It did not say that his decision was final under any and all circumstances; nor do I think it meant to say so. Did it mean to say that his decision was final if it was fraudulent? Did it mean to say that it was final if it was so grossly erroneous as to imply bad faith? Did it mean to say that it was final if it was purely arbitrary and capricious and in plain disregard of the actual facts?

This court and the Supreme Court have been continually faced with the provision in Government contracts that the decision of the contracting officer on a dispute about any matter arising under a Government contract was "final and conclusive." In cases too numerous to mention, we had held that any decision of the contracting officer which was arbitrary or capricious or not supported by substantial evidence could be reviewed by

the court and, if found so to be, it could be set aside. Finally, however, the Supreme Court in United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), said that the decision of the contracting officer could not be set aside unless it was fraudulent, by that meaning that the contracting officer had been guilty of conscious wrongdoing. After this decision, Congress passed what was known as the Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C. §§ 321–322 (1958). That Act provided that, notwithstanding the provision in Government contracts that the decision of the contracting officer was final and conclusive, it could be reviewed by the courts if fraudulent or so grossly erroneous as to imply bad faith or if arbitrary or capricious or not supported by substantial evidence.

Could the Congress have intended to give any more finality to the decision of the Secretary of Labor than to that of a contracting officer whose decision was expressly made final and conclusive, whereas there is nothing in the Davis-Bacon Act, 40 U.S.C. § 276a (1952 ed.), that says that the decision of the Secretary of Labor shall be final and conclusive?

Of course, there was some evidence to support the decision of the Secretary of Labor, but the Supreme Court has said that in determining whether or not there was substantial evidence to support a finding, the entire evidence must be considered. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950). When the entire evidence in this case is considered, as the findings show, there can be no question that the prevailing wage in this community was not that specified for the operators of power equipment under the classification of "Building and Heavy Construction" but rather that prevailing for them under the classification of "Heavy and Highway Construction," which was the same as that under "Highway Construction."

Therefore, even if the Chief of Engineers had the right to refer this question to the Secretary of Labor, I still think that we are not bound by his decision since it was not supported by substantial evidence when the evidence is considered in its entirety and not merely one isolated piece of evidence.

As a result of this decision, this contractor has been required to pay many thousands of dollars more than he was due to pay had the operators of this power equipment been properly classified under "Heavy and Highway Construction" rather than under "Building and Heavy Construction."

For these reasons I respectfully dissent.