**BURNETT CONSTRUCTION COMPANY**

v.

**The UNITED STATES.**

**No. 238–65.**

United States Court of Claims.

July 16, 1969.

John I. Heise, Jr., Washington, D. C., attorney of record, for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make recommendation for conclusions of law under the order of reference and Rule 99(c). The commissioner has done so in an opinion and report filed on December 10, 1968, wherein such facts as are necessary are stated in the opinion. Defendant has filed a request for review pursuant to Rule 55(b) (3)

and the request has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff's motion for summary judgment is partially allowed with respect to the wage rate claim for $18,902.31 and a partial judgment is entered for plaintiff in that amount. Defendant's cross-motion for summary judgment is partially allowed with respect to the wage rate claim for $3,720 and the petition as to that claim is dismissed.

## OPINION OF COMMISSIONER

WHITE, Commissioner:

The parties have submitted cross-motions for summary judgment with respect to the portion of the petition (paragraphs 3–20) dealing with the plaintiff's "wage rate claims" in the respective amounts of $18,902.31 and $3,720.

In disposing of the cross-motions for summary judgment, it is necessary to review, under the standards prescribed by the Wunderlich Act (41 U.S.C. §§ 321, 322), decisions that were rendered by the Board of Contract Appeals of the General Services Administration on the two wage rate claims in an opinion dated September 30, 1963 (Dockets Nos. 831 and 832).

All statements in the nature of factual findings contained in the present opinion were derived from the opinion of the GSA Board of Contract Appeals, with one exception that will be identified subsequently.

As indicated hereafter in this opinion, it is concluded that the GSA Board of Contract Appeals properly disposed of one of the wage rate claims, but committed error in disposing of the other claim.

### Introduction

Both of the wage rate claims arose in connection with the performance by the plaintiff of a contract (No. GS 07–B–4355) with the defendant (represented by a contracting officer of the Public Buildings Service, General Services Administration) for the construction of the United States Post Office and Court House in Victoria, Texas ("the contract"). The contract was awarded to the plaintiff, as the low bidder in a competitive bidding procedure, on July 24, 1959. It provided for the payment by the defendant to the plaintiff of a lump-sum price of $1,076,070 upon the successful completion of the work.

The contract was subject to the provisions of the Davis-Bacon Act. The first section of that act (40 U.S.C. § 276a) declares (with exceptions not material here) that each Government construction contract shall contain a provision requiring the contractor to pay all mechanics and laborers employed directly upon the site of the work wages computed at rates not less than those stated in the contract specifications, "which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed * * *."

In accordance with the requirement of the Davis-Bacon Act, a wage determination of the Secretary of Labor (Decision No. T-21,257, dated April 23, 1959) was attached to and made a part of the contract specifications. Paragraph 3–1 of section 3 of the specifications stated that the attached wage determination fixed the minimum hourly rates of wages which should be paid to laborers and mechanics employed or working directly upon the site of the work. Furthermore, paragraph 20 of the general provisions of the contract stated in part as follows:

(a) All mechanics and laborers employed or working directly upon the site of the work will be paid unconditionally * * * the full amounts due at time of

payment, computed at wage rates not less than those contained in the wage determination decision of the Secretary of Labor which is attached hereto and made a part hereof * * *.

The Secretary of Labor's Decision No. T-21,257 listed (among others) the following crafts and hourly wage rates:

| Crafts | Per hour |
|---|---|
| Laborers: | |
| Unskilled | $1.95 |
| Mason tenders | 2.125 |
| Mortar mixers | 2.225 |
| Pipelayers (concrete and clay) | 2.125 |
| Asphalt rakers | 1.95 |
| Well drillers | 2.50 |
| Blasters | 2.375 |
| Powdermen | 2.375 |
| Plasterers' tenders | 2.225 |
| Truck drivers | 1.975 |
| Truck drivers, flat bed and dump | 2.025 |

Apprentice electricians and linemen: (by 6 months intervals): 45, 50, 55, 60, 63, 67, 70, and 75% of the journeymen's rate.

The notice to proceed with the performance of the work under the contract was issued to the plaintiff on August 4, 1959.

A few days later, the plaintiff forwarded to the Secretary of Labor on August 10, 1959 a written protest against the portion of Decision No. T-21,257 previously set out in this opinion. In its protest, the plaintiff asserted that such wage rates were in excess of the wage rates actually prevailing in the area where the contract was to be performed. The plaintiff requested that the Secretary of Labor take appropriate action to correct the error.

On December 9, 1959, the Secretary of Labor issued a "letter of inadvertence" to the General Services Administration. That letter, in effect, withdrew the portion of Decision No. T-21,257 previously set out in this opinion, and further stated as follows:

Due to an inadvertence the following rates for the classifications noted below should have been specified:

| | Per hour |
|---|---|
| Laborers | $1.25 |
| Plasterers' tenders | 1.50 |
| Mason tenders | 1.375 |
| Mortar mixers | 1.50 |
| Truck drivers | 1.50 |

Apprentice electricians (by 6 months intervals): 40, 50, 55, 60, 65, 70, 75, 80, 85, and 90% of the journeymen's rate.

The contract contained in paragraph 3 of the general provisions the customary "changes" provision, which stated in part as follows:

The contracting officer may at any time, by a written order, * * * make changes in the * * * specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, * * * an equitable adjustment shall be made and the contract shall be modified in writing accordingly. * * *

Following the corrective action by the Secretary of Labor on December 9, 1959, the contracting officer issued a written order authorizing corresponding reductions in the schedule of minimum wage rates that formed part of the contract specifications. In doing so, however, the contracting officer indicated that this change would provide a basis for an equitable adjustment downward in the contract price.

During the period beginning August 5, 1959 and extending through January 13, 1960, the plaintiff paid its laborers, plasterers' tenders, etc., wages in accordance with the minimum wage rates specified in the Secretary of Labor's original Decision No. T-21,257. Beginning with January 14, 1960, however, and continuing throughout the remainder of the work under the contract, the plaintiff paid such workmen wages in accordance with the minimum wage rates specified in the Secretary of Labor's corrective action of December 9, 1959 and the

corresponding change order issued by the contracting officer.

### The $3,720 Claim

As a result of paying its laborers, etc., during the period from August 5, 1959 through January 13, 1960, wages in accordance with the minimum wage rates specified in the Secretary of Labor's original Decision No. T-21,257, the plaintiff's labor costs for that period were $3,720 more than they would have been if the plaintiff had paid such workmen wages in accordance with the wage rates actually prevailing at the time in the area where the contract was being performed.

In a letter dated January 20, 1962, the plaintiff submitted to the contracting officer a claim for additional compensation in the amount of $3,720 to cover the increased labor costs mentioned in the preceding paragraph. This claim was finally rejected by the contracting officer on May 23, 1962.

Thereafter, the plaintiff on June 20, 1962 appealed to the Administrator of the General Services Administration from the contracting officer's rejection of the claim for $3,720. The appeal was referred to GSA Board of Contract Appeals, and was assigned Docket No. 832 for purposes of identification.

After a hearing was held in Dallas, Texas, on December 5, 1962, the GSA Board of Contract Appeals denied the plaintiff's appeal in Docket No. 832 on September 30, 1963.

The plaintiff, in the administrative proceeding before the GSA Board of Contract Appeals and in the present judicial proceeding, has failed to articulate any persuasive theory for the allowance of this claim in the amount of $3,720.

When the plaintiff, during the period from August 5, 1959 through January 13, 1960, paid its workmen wages in accordance with the minimum wage rates specified in the Secretary of Labor's original Decision No. T-21,257, the plaintiff did no more than what it had ex-pressly agreed to do in signing the contract. As indicated in the preceding part of this opinion, paragraph 20 of the general provisions of the contract stated in clear and unambiguous language that "All mechanics and laborers * * * will be paid * * * at wage rates not less than those contained in the wage determination decision of the Secretary of Labor which is attached hereto and made a part hereof * * *." This contractual obligation on the part of the plaintiff to pay its workmen wages at rates not less than those contained in the Secretary of Labor's Decision No. T-21,257 was not contingent to any extent upon an evaluation of Decision No. T-21,257 as correctly reflecting the wage rates actually prevailing in the contract area.

Furthermore, paragraph 3-3 of section 3 of the contract specifications expressly stated that "Under no circumstances shall any mistake * * * in the wage rates set forth [in Decision No. T-21,257] entitle the successful bidder * * * to an increase in the contract price or other additional payment or recovery." Thus, the plaintiff waived in advance any right that it might otherwise have had to assert a claim for an amount over and above the agreed contract price on the ground that Decision No. T-21,259 did not correctly reflect the wage rates actually prevailing in the contract area.

In view of the considerations previously stated, and since the Davis-Bacon Act confers no litigable rights on a bidder for a Government construction contract (United States v. Binghamton Construction Co., Inc., 347 U.S. 171, 176, 74 S.Ct. 438, 98 L.Ed. 594 (1954)) and the correctness of a determination by the Secretary of Labor under that act is not open to attack on judicial review (United States v. Binghamton Construction Co., Inc., *supra*, 347 U.S. at p. 177, 74 S.Ct. 438; Nello L. Teer Co. v. United States, 348 F.2d 533, 537, 172 Ct.Cl. 255, 265 (1965), cert. den. 383 U.S. 934, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966)), it must be concluded that the GSA Board

of Contract Appeals properly denied the plaintiff's claim in the amount of $3,-720.

### The $18,902.31 Claim

After the work under the contract was successfully completed, an audit of the plaintiff's payrolls was made by the General Services Administration. This audit revealed that employees of the plaintiff performing work under the contract on and after January 14, 1960 in wage classifications affected by the Secretary of Labor's corrective action of December 9, 1959, and the corresponding change order issued by the contracting officer had been paid $18,902.31 less than they would have received if the minimum wage rates specified in the Secretary of Labor's original Decision No. T-21,257 had been maintained by the plaintiff throughout the job.

On June 6, 1962, the contracting officer formally notified the plaintiff that the sum of $18,902.31 would be withheld by the General Services Administration as an equitable credit adjustment in the contract price because of the change which had been made in the minimum wage rates. The plaintiff took a timely appeal from the contracting officer's action to the Administrator of the General Services Administration. This appeal was referred to the GSA Board of Contract Appeals, and was assigned Docket No. 831 for purposes of identification.

A hearing on the appeal in Docket No. 831 was held in Dallas, Texas, on December 5, 1962. Thereafter, the GSA Board of Contract Appeals denied the appeal on September 30, 1963.

In considering the plaintiff's claim for $18,902.31, it should be borne in mind that this claim—unlike the one discussed in the preceding part of the opinion—is not a claim by the plaintiff for an amount over and above the agreed contract price. Rather, this is a claim for an amount withheld from the plaintiff by the defendant out of the agreed contract price. In making the withholding, the defendant acted on the theory that it was entitled to an *equitable* adjustment downward in the agreed contract price.

The defendant was entitled to an equitable adjustment downward in the agreed contract price if—and only if—the plaintiff, as a result of the change made by the contracting officer in the contract specifications respecting the minimum wage rates that were payable under the contract, was placed in a more favorable position as to labor costs than the plaintiff had reasonably anticipated at the time when it entered into the contract. Keco Industries, Inc. v. United States, 364 F.2d 838, 850, 176 Ct.Cl. 983, 1002 (1966); *cf.* Bruce Construction Corp. v. United States, 324 F.2d 516, 518, 163 Ct.Cl. 97, 100 (1963).

Therefore, the question as to the scale of wages that the plaintiff reasonably expected to pay when it entered into the contract was significant. The GSA Board of Contract Appeals did not make a finding on this important factual issue, but only one finding could have been made with substantial evidentiary support in the record before the Board.

The plaintiff presented to the Board oral testimony and affidavits from personnel of the plaintiff indicating that the plaintiff was familiar with the wage rates actually prevailing in the area where the contract was to be performed; that the plaintiff expected to pay its workmen in accordance with the prevailing wage rates; and that the plaintiff calculated the probable labor costs and prepared its contract bid on the basis of the wage rates actually prevailing in the contract area, rather than on the basis of the minimum wage rates set out in the Secretary of Labor's original Decision No. T-21,257 and contained in the contract specifications. This evidence was not contradicted in the record before the GSA Board of Contract Appeals.

Therefore, in the light of the uncontradicted evidence presented by the plaintiff in the administrative proceeding, it must be concluded that the contracting officer's change order respecting the scale of minimum wage rates in the con-

tract specifications did not place the plaintiff in a more favorable position with respect to labor costs than the plaintiff had anticipated at the time when it entered into the contract, since the change order merely reflected the wage rates actually prevailing in the contract area, which the plaintiff had expected to pay all along.

 As indicated in the preceding part of this opinion, the plaintiff was legally obligated, up until the time when the change order was issued by the contracting officer, to pay wages in accordance with the minimum rates set out in the Secretary of Labor's original Decision No. T-21,257, even though that determination was factually erroneous and did not correctly reflect the wage rates actually prevailing in the contract area. However, we are now dealing with the equities of the situation. Surely, it can reasonably be expected (as was demonstrated in this case) that a responsible Government official will do his duty and correct an erroneous factual determination when the error is called to his attention. Hence, the correction of the original factual error by the Secretary of Labor does not provide a sound basis for an *equitable* adjustment downward in the contract price, when the uncontradicted evidence shows that the plaintiff entered into the contract with knowledge of what the wage rates prevailing in the contract area actually were, and based its estimate of labor costs and its bid on the wage rates actually prevailing in the area. The plaintiff's anticipated labor costs were not reduced by the correction of the Secretary of Labor's error. Under the circumstances, it is difficult to perceive any reason why, from the equitable standpoint, the defendant should be entitled to receive the completed construction job at a price less than that which the defendant agreed to pay.

Therefore, the plaintiff is entitled to recover on its claim for $18,902.31, representing part of the agreed contract price that was withheld from the plaintiff by the defendant.

### Conclusion

The plaintiff's motion for summary judgment should be partially allowed with respect to the wage rate claim for $18,902.31 and a partial judgment should be entered for the plaintiff in the amount of $18,902.31; and the defendant's cross-motion for summary judgment should be partially allowed with respect to the wage rate claim for $3,720 and the petition should be dismissed as to that claim.[1]

---

1. The plaintiff's delay damage claims are not involved in or affected by the disposition of the cross-motions for summary judgment.