MaddeN, Judge,
delivered the opinion of the court:
The plaintiff, a resident of Chicago, Ill., and a citizen of the United States, was born in the Slovakian area of Czechoslovakia. About 1930 he received from a brother in Czechoslovakia a photograph of his birthplace. He had the picture enlarged and framed. The interest which his friends of Czechoslovakian origin showed in the picture gave him the idea that if he had similar pictures he could sell them at a profit. After extended negotiations with the Czechoslovakian Government, he obtained, in 1939, 38 negatives of aerial photographs showing towns and villages in one area of Slovakia. He paid a substantial sum for the negatives.
The plaintiff had enlarged photographs made from the negatives, by a commercial photographer. He succeeded in selling a good many pictures made from about 25 of the negatives, and during the years 1939-1942 made a substantial amount of money from the sales. We are not able to determine, except by rough approximation, how much money he made.
The United States Office of Strategic Services learned that the plaintiff had the negatives and in October 1942 inquired of him whether it could get the negatives and for what price. The plaintiff turned the negatives over to the OSS without charge, but under an agreement that the negatives would be returned to him, presumably when they had served the purpose for which the OSS obtained them.
In August of 1946 the plaintiff requested the return of the negatives. Upon investigation, it was found that they had been lost by the OSS. The plaintiff then requested compen-station. The OSS in 1947 found a set of 38 prints of aerial *535 views of places in the same area of Slovakia to which the plaintiff’s negatives related. Whether these prints had been made from the plaintiff’s negatives we do not know. The Government offered to have negatives made from these prints, if the plaintiff would accept those negatives in full satisfaction of his claim for the loss of his negatives. The plaintiff asked that the new negatives be made and sent to him for examination. He rejected them without examination, but for the stated reason that prints made from them were not clear. In 1951 the Government offered to pay the plaintiff some $86.00 for certain prints which he had furnished the OSS in 1942 at the time he turned over the negatives, but this offer was conditioned upon his accepting the $86.00 in full satisfaction of his claim.
The plaintiff has sued for $7,600 which he says was the value of his negatives. He is entitled to recover their value. The transaction was a bailment for the benefit of the bailee, with an express agreement for the return to the bailor of the subject of the bailment. The duty created by the express agreement coincided with the duty which the law would have imposed, had there been no express agreement. The measure of damages for the failure to return the prints is their fair value.
The principal disagreement in the case has been with regard to the value of the prints. There was no general market value for them, of course. But they were a source of potential income to the plaintiff. We find this from his ability to sell his pictures before he turned his prints over to the OSS and from the fact of the considerable population of Slovakian origin in Chicago and other American cities. The evidence as to how many pictures he sold in the 1939-1942 period, how much he got for them, and what profit he made, is by no means satisfactory. But it was the defendant, the Government, which lost the plaintiff’s property, and he should not forfeit his claim because he did not make, and preserve, accurate records of his small transactions. Our best estimate is that he could have reasonably hoped to make a profit of $2,000 from the sale of his pictures, if the prints had been returned to him as agreed. The plaintiff may have *536 a judgment for that amount, plus $86.00 for the prints referred to above.
It is so ordered.
Laramore, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes the following findings of fact:
1. The plaintiff, John Zavodny, born in Czechoslovakia, is and has been at all times here material a resident of Chicago, Illinois, and a naturalized citizen of the United States.
2. In 1930 one of plaintiff’s brothers in Czechoslovakia sent him a photograph of his birthplace. Plaintiff had the picture enlarged and framed and showed it to a number of his friends who lived in Chicago. These friends asked questions about the picture which gave plaintiff an idea that he could sell similar pictures to his friends of Czechoslovakian origin in Chicago.
3. The plaintiff, a carpenter by trade, has amateur photography as a hobby. He owned 38 photographic negatives of aerial views of localities in the area of Turciansky Svaty Martin (also known as Turiec) which is situated in that part of Czechoslovakia known as Slovakia. The 38 negatives were acquired by the plaintiff, after negotiations with the Czechoslovakian Government extending over an extended period of time, in the early part of 1939. They were obtained from Czechoslovakian Ministry of National Defense, through the Ministry of Foreign Affairs.
4. The negatives were 4x 7" in size, were contained in glassene envelopes. They were made, probably, in 1937 or 1938, by an aerial photographic unit of Czechoslovakian Air Force. The negatives had a potential useful life of 10 or more years in 1942.
5. The plaintiff obtained the negatives for the purpose of engaging in the business of selling enlarged pictures made from them to persons in the United States of Czechoslovakian birth or descent. Commencing in the fall of 1939, he *537 engaged during spare time or week-ends in the business of selling enlarged pictures made from them to persons residing in the Chicago area.
6. During the period between the fall of 1939 and October 25,1942, the plaintiff sold to persons in the Chicago area between 275 and 300 enlargements of various sizes, including over 200 of the 20" x 30" size, made from some 24 to 27 of the negatives. He did not sell any enlargements made from the remaining negatives during this period because “I didn’t come in contact with the people [from those villages], maybe they don’t live here in Chicago”.
During the period between the fall of 1939 and October 25,1942, the plaintiff made a substantial net profit from the sale of enlargements made from the negatives. It is not possible, from the evidence, to determine with accuracy the amount of that net profit. Most of such net profit was derived from the sale of enlargements 20" x 30" size, since he sold only a few larger than that size and there was little profit from the sale of smaller sizes.
7. On October 14, 1942, the Office of Strategic Services (hereinafter called OSS) advised the plaintiff by letter signed by Charles Katek that OSS was interested in the plaintiff’s aerial pictures of Slovakia, and that OSS believed they would be of service in the war effort. OSS requested that the plaintiff supply it with his negatives of the said pictures and indicate what reimbursement therefor ought to be made to him.
8. On October 25,1942, in response to its request of October 14, 1942, OSS, through Charles Katek, received from the plaintiff the 38 negatives described in findings 3 and 4, together with a number of photographic prints of various sizes. All of the negatives were aerial views of localities in Slovakia. The plaintiff made no charge to OSS for the use of the negatives, under an agreement that all of them were to be returned to him. The negatives were in reasonably good condition when received by OSS. The materials furnished to OSS by the plaintiff were of value to that organization.
9. In August 1946, the plaintiff by letter requested that OSS return to him all the negatives it had received from him *538 October 25,1942. On November 27, 1946, Colonel Knox P. Pruden, AGD, Adjutant, replied for the Director, Strategic Services Unit, Office of the Assistant Secretary of War, advising the plaintiff that
* * * an exhaustive investigation of all archives and records fails to disclose any trace of * * * [the 38] negatives ; there is no indication whatsoever of their disposition or present whereabouts. We are therefore, of course, unable to carry out the agreement to return the negatives as you now request. We can only assume that your material was taken out of the office for operational use, and was lost, destroyed, or misplaced while being employed in connection with the activities of OSS overseas.
10. Subsequent to November 1946, the plaintiff made continued efforts to obtain reimbursement from the defendant for his 38 negatives. These efforts resulted in the defendant’s finding, on May 26, 1947, a complete set of 38 prints constituting aerial views of localities in the area of Turciansky Svaty Martin, Slovakia, by the use of which prints the defendant offered to develop new negatives to be given to the plaintiff. The evidence does not disclose whether or not this set of prints was made from the plaintiff’s original 38 negatives.
11. On June 9, 1947, the plaintiff advised the defendant that he was willing to accept new negatives, subject to examination by the plaintiff to determine loss, if any, in intensity or sharpness of detail, with the final acceptance of the new negatives to be subject to a monetary settlement based on the loss, if any, of intensity and sharpness of detail in the new negatives. The defendant replied, on June 17, 1947, that acceptance by the plaintiff of the new negatives would “have to be an unconditional acceptance so far as any claim for loss is concerned”. On November 7, 1947, the defendant again asserted that if the plaintiff “accepts the pictures, the acceptance would be considered a release of all claims arising out of the loan and loss of his original negatives”.
12. On July 14, 1948, the plaintiff requested that the new negatives be forwarded to him, and, on September 23, 1948, such negatives were forwarded to the plaintiff by the defendant with the statement that “acceptance of these nega *539 tives by Mr. Zavodny will be considered as a release of all claims arising out of the loss of his original negatives”. On November 10, 1948, the plaintiff, through his attorney, advised the defendant that “new prints [had been prepared] from these negatives and * * * such a great loss of clearness and detail [had been found] that he has felt obliged to refuse to accept these negatives in settlement of his claim * * The new negatives were returned to the defendant under separate cover. They had not in fact been examined by the plaintiff nor by anyone for him.
13. On August 10, 1951, the plaintiff again asked whether the defendant would consider his claim for the loss of his negatives. On August 24,1951, the Strategic Services Unit, War Department, refused to pay the plaintiff anything for his negatives by advising him that upon demand he would be paid $1.00 each for small prints and $2.00 each for larger prints furnished by the plaintiff to the defendant on October 25, 1942, but that the “payment of this amount would be in complete and final settlement of the matter insofar as this office is concerned, since it has no authority to pay any other claim”.
14. If the plaintiff’s 38 negatives had been returned to him by the defendant on November 27,1946, he would have been able to continue to sell enlargements made from the negatives. Although the plaintiff has not been in possession of his negatives since October 25, 1942, many people have asked the plaintiff when he would have such enlargements for sale, and some persons continued to inquire of the plaintiff to this effect up to the time of the trial of this case.
People from the region of Turciansky Svaty Martin are located in Chicago, Illinois, Pittsburgh, Pennsylvania, New York and New Jersey. The plaintiff’s sales of enlargements made from his negatives during the period 1939-1942 were limited to the Chicago area. The plaintiff expected to find persons in other areas to whom he might sell enlargements made from his negatives.
15. Upon a consideration of all of the relevant facts and circumstances, including the nature of the property involved, the condition and quality of the negatives, the purpose for which they were procured, the uses to which the negatives *540 were put by the plaintiff between 1939 and 1942, and the uses to which the negatives would have been put had they been returned to the plaintiff on November 27, 1946, it is found that the fair and reasonable value of the 38 negatives supplied by the plaintiff to the defendant was, on November 27, 1946, $2,000.
16. In addition to the above-mentioned negatives, plaintiff delivered to the Office of Strategic Services 68 photographic prints, 50 of size 4%" x 7" and 7" x 9", and 18 of larger sizes, for which defendant agreed to pay plaintiff at the rate of $1.00 for the smaller prints and $2.00 for the larger ones a total of $86.00. Plaintiff has not been paid for these prints.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States the sum of two thousand eighty-six dollars ($2,086).