**CLEVENGER ROOFING & SHEET
METAL COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 576–83C.

United States Claims Court.

June 6, 1985.

OPINION

REGINALD W. GIBSON, Judge:

This is an action by plaintiff, Clevenger Roofing & Sheet Metal Company (Clevenger Roofing), by which it asserts a claim against the defendant (through its agent, the Secretary of the Department of Labor) for the return of $24,179.30, plus interest, which amount allegedly was illegally exacted from plaintiff. The gravamen of plaintiff's claim is that notwithstanding having obtained from the contracting officer a duly approved "additional Davis-Bacon Act wage classification for 'roofer-helpers' based on the rates established in the collective bargaining agreement," it nevertheless was required to ultimately pay those helpers roofer's wage rates consistent with the applicable wage determination by the Secretary of Labor. The roofer's wages were higher than the "roofer-helper" wage rates. Thus, it is the amount of that wage dichotomy which the plaintiff seeks by this action.

Plaintiff avers that "jurisdiction of this matter ... is based upon 28 U.S.C. § 1491; and that the claim is founded upon the Federal Davis-Bacon Act, 40 U.S.C. § 276a, et seq. [the Act] and Defense Acquisition Regulation (DAR) 18.704.4."

This opinion addresses Defendant's Motion To Dismiss the plaintiff's complaint which is premised on the ground that the pleader "fails to state a claim within the Court's jurisdiction," citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541 (Fed.Cir.1983). In short, the thrust of defendant's motion is that plaintiff, as a subcontractor to Santa Fe, Inc. (*i.e.,* the prime contractor), did not have privity of contract with the United States; that defendant never exacted *any* funds from plaintiff, has no funds belonging to plaintiff and owes no funds to plaintiff; and that the plaintiff is actually challenging the wage determination of the Secretary of Labor, under the guise of a procedural violation, which is not subject to judicial review.

Sally A. Blackmun, Atlanta, Ga., for plaintiff. Stokes, Shapiro, Fussell & Genberg, Atlanta, Ga., of counsel.

Stephen R. Bergenholtz, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

Having fully considered the pleadings of the respective parties, and without oral argument, the court finds that it is without jurisdiction to review plaintiff's claim and that defendant's motion to dismiss should be granted.

## FACTS

Santa Fe, Inc. was the prime contractor with the defendant, U.S. Department of the Army, Corps of Engineers (the Corps), under contract No. DACA 31–77–C–0143 executed on or about November 8, 1977, for the construction of the Main Production Facility at the Lima Army Modification Center (the project). Concomitantly therewith, and also on November 8, 1977, Clevenger Roofing entered into a written subcontract agreement with Santa Fe, Inc. to furnish and provide labor, supervision, materials and equipment for the construction of a certain portion of the project. The Davis-Bacon Act [1] applied to both the prime contract between defendant and Santa Fe and the *subcontract between Santa Fe and the plaintiff.*

1. The Act provides, in pertinent part, that:
    (a) *The advertised specifications for every contract* in excess of $2,000, *to which the United States ... is a party, for construction ... of public buildings* or public works of the United States ... within the geographical limits of the States of the Union ... and which requires or involves the employment of mechanics and/or laborers *shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed, ...* (Emphasis added.)

2. This agreement was made among the Central Ohio Division, Associated Contractors of Ohio, Associated General Contractors of America and United States Tile and Composition Roofers, Damp and Waterproofing Workers Association, AFL–CIO, Local Union No. 86 (the collective bargaining agreement).

3. Similar to the requirements listed in 32 C.F.R. § 18.704.4, the contract between the defendant and Santa Fe provided that:

Clevenger Roofing's *subcontract* price on the project was premised on employing "roofer-helpers" whose wages were in accordance with the existing collective bargaining agreement.[2] Such employment of "roofer-helpers" was consistent with the prevailing area practice, who had previously been employed by the Corps and utilized on previous contracts at the subject location.

The prevailing wage rate determination of the Secretary made applicable to the contract in issue was "wage determination number OH77–2069," dated May 13, 1977. However, this wage determination did not contain a wage classification entitled "roofer-helpers". As a result thereof, Clevenger Roofing, after it had contracted with Santa Fe, requested the contracting officer to authorize an additional Davis-Bacon Act wage classification for "roofer-helpers" based upon the rates contained in the collective bargaining agreement. This request was in accordance with the regulatory procedures [3] set forth in 32 C.F.R. § 18.704.4 (1976) which provide that:

    (d) *The Contracting Officer shall require that any class of laborers or mechanics, including apprentices and trainees, which is not listed in the wage determination decision and which is to be employed under the contract shall be classified or reclassified conformably to the wage determination decision, and shall report the action taken to the Secretary of Labor. If the interested parties cannot agree on the proper classification or reclassification of a particular class of laborers or mechanics to be used, the Contracting Officer shall submit the question, together with his recommendation, to the Secretary of Labor for final determination.* Apprentices and trainees may be added under this clause *only* where they are employed pursuant to an apprenticeship or trainee program meeting the requirements of the Apprentices and Trainees clause below.

    \*     \*     \*     \*     \*     \*

    (f) Paragraphs (a) through (e) of the clause shall apply to this contract to the extent that it is (1) a prime contract with the Government subject to the Davis-Bacon Act or (2) a subcontract also subject to the Davis-Bacon Act under such prime contract. (Emphasis added.)

... Whenever any laborer or mechanic, including apprentices and trainees, is to be employed in a classification not listed in the wage determination decision applicable to the contract, the contractor concerned must submit a statement of the proposed additional classification and minimum wage rate, including fringe benefits payments, if any. DD Form 1565, "Request for Authorization of Additional Classification and Rate," shall be used for such proposals. Upon approval the additional classification and rate shall be posted with the wage determination decision.

(b) *Approval.* Upon receipt of the request for authorization, the contracting officer shall review it to determine whether it meets the following criteria:

(i) the classification cannot be fitted into one contained in the applicable wage determination;

(ii) the classification is generally recognized in the area of construction industry; and

(iii) the proposed wage rate, including any fringe benefits, conforms to the wage determination decision contained in the contract.

*If the above criteria are met and no interested party objects to the proposed classification, the contracting officer or his representative shall approve the proposal and submit an information copy to the Department of Labor. If the criteria are not met or the interested parties cannot agree on the proposal, the contracting officer or his representative shall submit the proposal together with available pertinent information and his recommendation to the Department of Labor for final determination.* Upon approval, the contracting officer shall notify the contractor and instruct him to post the approved rate and classification in accordance with 18–704.2(j).

(c) *Submission.* The completed DD Form 1565 (with information and recommendations where appropriate) shall be forwarded to the U.S. Department of Labor, Washington, D.C. 20210, for infor-mation or final determination as required. (Emphasis added.)

Accordingly, plaintiff's request, *supra,* was made to the Solicitor of Labor, U.S. Department of Labor on DD Form 1565, Request for Authorization of Additional Classification and Rate, dated March 30, 1978. The contractor and subcontractor were identified therein as Santa Fe, Inc. and Clevenger Roofing & Sheet Metal Company, respectively, and both signed said form appropriately. On Form 1565 itself, the authorized representative of the contracting officer, Mr. John Bauman, indicated that he "approved" of this additional classification for "roofer-helpers" that allowed the plaintiff to pay such helpers 60% to 90% (depending on their level of experience) of the wage rate earned by roofers. Mr. Bauman also sent an approval letter dated June 28, 1978, to Santa Fe wherein he acknowledged that the request for authorization of additional wage classification for "roofer-helpers" was through Santa Fe from Clevenger Roofing. After receiving the foregoing approval, Santa Fe, on June 29, 1978, notified Clevenger Roofing of the approval of its request. Thereafter, Clevenger Roofing hired "roofer-helpers," performed its contractual obligation under the subcontract while utilizing "roofer-helpers," and paid them in accordance with the rates approved by the contracting officer's authorized representative.

In spite of the foregoing, Santa Fe was subsequently notified, by a letter from Mr. Bauman dated September 27, 1978, that the Secretary of Labor had denied Santa Fe's (Clevenger's) initial request. Therein, Mr. Bauman stated that the Secretary of Labor makes the final determination as to whether or not a classification and rate will be added to the applicable wage determination. He therefore advised Santa Fe that—

"... all 'rooferhelpers' must be re-classified to the category for laborers in your wage determination and must be paid no less than the minimum wage indicated for that craft."

Santa Fe appropriately advised plaintiff on September 28, 1978, that the Secretary denied its request and that "[a]ll 'rooferhelpers' must be reclassified as laborers and must be paid no less than the minimum wage indicated for that craft." The Secretary's decision v as appealed[4] by plaintiff to, and denied by, the Wage Appeals Board in its decision reported as *Clevenger Roofing and Sheet Metal Co.*, WAB 7914, 20 August 1980.

Judging from that decision rendered by the Wage Appeals Board, which upheld the Secretary of Labor's denial, it was the position of the Wage and Hour Division that the classification of Apprentice and Roofing Trainees, as defined in the collective bargaining agreement, was in reality an informal trainee position which was not registered in any bona fide training program. Pursuant to the contract and regulations, apprentices and trainees could *only* be employed at a rate less than the predetermined journeyman rate if they were registered in a recognized apprenticeship or approved trainee program. *See* 29 C.F.R. § 5.5(4) (1977); 32 C.F.R. § 18.703.1 (1976). The Wage and Hour Division determined that there was no justification for issuing a "roofer-helpers" rate because the "roofer-helpers" working for Clevenger were not in an approved training program and that their duties were an integral part of the roofer's duties for which there was an existing classification and rate in the applicable wage decision. This determination was made despite the prevailing area practice of employing "roofer-helpers" at the collective bargaining rate.

In view of the Secretary's adverse decision, back wages were assessed against Santa Fe by the Corps and funds were withheld from amounts then due it under the prime contract.[5] Consequently, Santa Fe forwarded a letter to the contracting officer dated January 6, 1981, and emphasized that—(i) it had fully met the provisions of 32 C.F.R. § 18.704.4 in connection with obtaining approval of an additional wage classification, and (ii) the contracting officer was negligent in "allowing" the Secretary of Labor to reverse the contracting officer's approval of June 28, 1978. In addition to the foregoing, Santa Fe requested release of its funds withheld or, alternatively, a modification of the contract to reflect the back wages assessed and/or a final decision of the contracting officer.

The contracting officer responded by letter dated March 30, 1981, and stated that because the wage classification dispute was not covered by the Dispute Clause of the contract, it was not subject to the final decision of the contracting officer, and that Clevenger Roofing had prosecuted it to a final determination before the Wage Appeals Board. Santa Fe was also directed by the contracting officer to assure that plaintiff's employees were fully compensated for back wages to the extent of $20,881.50 and was given 15 days in which to comply subject to the pains and penalties of being visited with certain sanctions. As a consequence, Santa Fe paid the back wages ($20,881.50) to plaintiff's employees (previously classified and paid as "roofer-helpers"), and, in retribution, withheld $13,209.58 from Clevenger Roofing's current funds due under the subcontract. Consequently, plaintiff filed a suit in the Ohio courts on April 20, 1981, seeking, *inter alia*, the return of the funds withheld, *supra*, by Santa Fe. Santa Fe counterclaimed to that suit, seeking, *inter alia*, restitution of the payments to plaintiff's employees. Santa Fe prevailed therein on

---

4. In said appeal, plaintiff contended that it was unfair to deny the additional wage classification inasmuch as—(i) it was established in a bona fide collective bargaining agreement; (ii) it was the prevailing practice in the area to employ "roofer-helpers"; (iii) plaintiff's request had been previously approved by the Corps' authorized representative; and (iv) plaintiff's work on the project was substantially complete before it was advised of the Secretary's denial.

5. The directive of the Corps dated September 27, 1978, commanded that the subcontractor pay wages over and above the approved rate per DD Form 1565, and Letter No. 198, June 28, 1978. And subsequent thereto, the Corps withheld $20,684.02 from Santa Fe's contract as proscribed in § 276a(a) of 40 U.S.C.

its motion for summary judgment, and the court grounded its opinion on the fact that (i) Santa Fe merely· relayed to plaintiff the information it·had received from the Corps regarding plaintiff's request and (ii) Santa Fe had not been negligent nor had it misrepresented any information received from the Corps to Clevenger. On appeal, damages of $24,179.30 found by the trial court were affirmed.

It is that $24,179.30, which Clevenger Roofing was *required to pay Santa Fe,* pursuant to a judgment of the Ohio Court of Appeals, which the former now seeks in its claim as having been illegally exacted from it by the United States.

## DISCUSSION

In response to plaintiff's complaint, defendant moves this court to enter an order dismissing the complaint on the grounds that "plaintiff fails to state a claim within the court's jurisdiction." Specifically, defendant avers that plaintiff is precluded from maintaining subject action in this court inasmuch as the latter's only relationship with the United States was indirect and only as a "subcontractor" to Santa Fe, the prime contractor. Thus, defendant maintains that because plaintiff has failed to establish privity of contract with the United States, it cannot maintain this suit in this court under the authority of *United States v. Johnson Controls, Inc.,* 713 F.2d 1541 (Fed.Cir.1983).

Alternatively, the defendant argues, *inter alia,* that if plaintiff's claim is not based on contract, it is a challenge to the Secretary's wage classification, which is not subject to judicial review. And, the defendant contends that the plaintiff is not a proper party to this action because the subject withholdings by the contracting officer were made against the prime contractor, Santa Fe; defendant exacted no funds directly from plaintiff.

Conversely, plaintiff contends that this action does not take issue with the Secretary's wage classification, but simply seeks the return of monies illegally exacted, and that the defendant misperceives its claim to

have been premised on "breach of contract." The operative facts pointed to by plaintiff, allegedly supporting its fundamental contention, are that:

(i) plaintiff's subcontract price on the project was premised on the use and payment of wages to "roofer-helpers" consistent with its collective bargaining agreement;

(ii) the "roofer-helpers" classification and wages were previously duly approved by the contracting officer at a similar contract work site at Lima, Ohio Army Base;

(iii) on May 13, 1977, the Secretary of Labor issued the prevailing wage rates (pursuant to the Davis-Bacon Act) applicable to this project;

(iv) because said wage determination failed to include a wage classification for "roofer-helpers," plaintiff sought authorization for an "additional [wage] classification" for same based on rates in its collective bargaining agreement (32 C.F.R. § 18–704.4);

(v) the request (processed by Santa Fe) was approved by the contracting officer, upon which plaintiff relied and made wage payments accordingly, until the Secretary of Labor overruled the prior determination of the contracting officer;

(vi) the defendant then undertook to "exact these funds ($20,881.50) from Santa Fe, who subsequently fully paid the adversely-affected employees; and

(vii) since the Ohio courts required plaintiff to reimburse Santa Fe the foregoing amount, and plaintiff paid accordingly, "[plaintiff] seeks from the government recovery of those *wrongfully exacted funds.*"

Plaintiff further argues, as a matter of law, that this court has jurisdiction to render judgment upon "any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department." In short, plaintiff avers that since, in overruling the contracting officer, the Secretary of Labor acted outside the scope of his

authority and violated the Davis-Bacon Act and 32 C.F.R. § 18.704.4, such action was inimical to the plaintiff's constitutional rights and, in turn, the illegal assessment was in law a wrongful exaction from plaintiff *through* Santa Fe. In this connection, plaintiff primarily relies on 28 U.S.C. § 1491 (1980); *Clapp v. United States*, 127 Ct.Cl. 505, 117 F.Supp. 576, *cert. denied*, 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954); *Ross Packing Co. v. United States*, 42 F.Supp. 932, 937 (E.D.Wash.1942); and *Pan American World Airways, Inc. v. United States*, 129 Ct.Cl. 53, 122 F.Supp. 682 (1954).

■■■ The threshold issue before the court, as we see it, is whether the Claims Court has jurisdiction over an alleged illegal exaction whereas here the plaintiff never directly paid any monies over to the government, but seeks monies from the defendant because of monies required to be paid to Santa Fe, by order of Ohio courts. Initially, the court's analysis begins with the observation that not every claim involving or invoking the Constitution, a federal statute, or a regulation is cognizable in the Claims Court. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Within the sphere of non-contractual claims considered under 28 U.S.C. § 1491, claims can be divided into two somewhat overlapping classes—(i) those in which the plaintiff has paid money over to the government, directly or in effect,[6] and seeks return of all or part of that sum; and (ii) those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the Treasury for damages sustained. *Id.* "In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was *improperly paid, exacted, or taken from the claimant* in contravention of the Constitution, a statute, or a regulation." *Id.* "In the second group, *where no such payment has been made,* the allega-

tion must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.* The former class of cases has been referred to by the court "as those in which 'the *Government has the citizen's money in its pocket*' and the claim is 'to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute'...." 178 Ct.Cl. at 606, 372 F.2d at 1008. (Emphasis added.)

Although plaintiff argues that its claim falls within the former class of cases as an "illegal exaction," the fact is, regarding the subcontract in issue, that the pleadings and record are void of any definitive evidence establishing that the defendant has ever exacted funds from the plaintiff. Nor does the defendant possess funds belonging to the plaintiff. Furthermore, the defendant has never previously possessed or demanded funds *from* plaintiff emanating from the foregoing contract(s). Rather, with respect to the Davis-Bacon Act issue(s), the defendant has only withheld funds belonging to Santa Fe, the prime contractor. It was Santa Fe that actually paid the back wages to plaintiff's employees, as required by the prime contract. And, upon that payment, the government released to Santa Fe the contract funds previously due and withheld under said prime contract. Thereafter, on August 7, 1982, Santa Fe exercised a release to defendant "from all claims whatsoever arising under and by virtue of" the contract between them.

Thus, it is indisputable that the government has never possessed or retained *plaintiff's* "money in its pocket." In point of fact, the only pocket the plaintiff's money could have been in was Santa Fe's because it (and only it) withheld $13,209.58 from plaintiff to partially reimburse itself for the back wages it paid Clevenger's employees according to law. When plaintiff sued Santa Fe for such funds withheld,

---

**6.** The phrase "in effect" has only been interpreted in illegal exaction cases to mean that the plaintiff, who *directly gave the government property,* "in effect" gave money to the defendant.

*See Gmo. Niehaus & Co. v. United States,* 139 Ct.Cl. 605, 612, 153 F.Supp. 428, 432 (1957); *Zavodny v. United States,* 139 Ct.Cl. 533, 152 F.Supp. 432 (1957).

Santa Fe successfully won its counterclaim against plaintiff for restitution of the wages Santa Fe paid the workers ($20,-881.50) plus damages, offset by the credit of $13,209.58 for the previously withheld funds. That lawsuit, which was affirmed on appeal, was *the* legal catalyst ultimately requiring plaintiff to pay over to Santa Fe the sum of $24,179.30. It is clear beyond cavil, therefore, that the government was not a party to that litigation nor did it act in any way with respect thereto. *See Clevenger Roofing & Sheet Metal Co. v. Santa Fe, Inc.,* Case No. 81 Civ. 0167, slip op. (Common Pleas Court of Allen County, Ohio, June 30, 1982), *aff'd* Case No. 1–82–43, slip op. (Ct.App. 3rd Dist., March 24, 1983).

■ Plaintiff has not cited to the court, nor could the court find, any case where this court (or its predecessor) took jurisdiction to determine the merits of an alleged illegal exaction where the money or property was *not* directly taken from the plaintiff by the government. *Cf. Clapp v. United States,* 127 Ct.Cl. 505, 177 F.Supp. 576, *cert. denied,* 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954); *Pan American World Airways, Inc. v. United States,* 129 Ct.Cl. 53, 122 F.Supp. 682 (1954); *Nehf v. United States,* 302 F.Supp. 356 (N.D.Ill.1969); *Ceravolo & Comis, Inc. v. United States,* 266 F.Supp. 215 (N.D.N.Y.1967). Although the plaintiff argues here that "nothing in the case law dealing with the recovery of ... illegally exacted funds [by the government] suggests that, for a party to recover such funds, it must be shown that the funds were exacted directly from the injured party," the short answer to that contention is that the burden to so show is on the plaintiff, which has not been met. On these facts, therefore, the court will not expand its jurisdiction, which must be narrowly construed, to include an arguable indirect exaction by the defendant against a subcontractor. As noted in *Connolly v. United States,* 1 Cl.Ct. 312, 314 (1982), *modified,* 716 F.2d 882 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984), we are constrained to hold that "this is a court of very limited

jurisdiction. Because all claims brought [here] are against the United States and therefore involve a waiver of sovereign immunity, ... the court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization, ... but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed." *Id.* We therefore hold that the facts of this case do not fall within the "first group" of non-contractual claims duly cognizable in this court under § 1491, as expressed in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

■ Plaintiff, similarly, is in no better jurisdictional position, with respect to the "second group" of non-contractual claims, *supra,* over which this court has jurisdiction. *Id.* For this court to be properly vested with jurisdiction, on such basis, it must be averred that—*"the particular provision of law* relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." 178 Ct.Cl. at 605, 372 F.2d at 1007. (Emphasis added.) However, plaintiff must also fail on that argument for the reason that it has not carried its burden of showing, as required, that either the Davis-Bacon Act or the regulations, *i.e.,* 32 C.F.R. § 18.704.4 (1976), implementing the Act, "can fairly be interpreted as mandating compensation by the Federal Government for the damages [allegedly] sustained." *United States v. Mitchell,* 463 U.S. 206, 226, 103 S.Ct. 2961, 2973, 77 L.Ed.2d 580 (1983). In fact, plaintiff has totally failed to address this critical point, although defendant has raised the issue to the court. Nonetheless, the court finds that there is no rational basis upon which to construe either the Davis-Bacon Act or 32 C.F.R. § 18.704.4 as mandating compensation by the federal government to a subcontractor for alleged procedural violations by the Secretary of Labor of such statute or regulation. This conclusion is especially compelling in light of the Supreme Court's decision in *United States v. Binghamton Construction Co.,* wherein

the Court stated regarding the Davis-Bacon Act that:

> "*The Act itself confers no litigable rights on a bidder for a Government construction contract.* The language of the Act and its legislative history plainly show that *it was not enacted to benefit contractors,* but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." (Footnotes omitted; emphasis added.)

347 U.S. at 171, 176–77, 74 S.Ct. 438, 441, 98 L.Ed. 594 (1954).

Judge Davis emphasized in *Eastport Steamship Corp.,* that non-contractual "[m]onetary claims which cannot be brought within these limits [*i.e.,* the two groups] are beyond this court's jurisdiction, even though they may intimately involve the Constitution,[7] an Act of Congress, or an executive regulation...." (Footnote omitted.) 178 Ct.Cl. at 607, 372 F.2d at 1008.

■ We do note, however, that even assuming *arguendo* that the court has jurisdiction to review the practices and procedures of the Secretary of Labor, as permitted under the federal question jurisdiction of 28 U.S.C. § 1331 by the Fourth and Fifth Circuits (*see Virginia ex rel. Commissioner, Department of Transportation v. Marshall,* 599 F.2d 588, 592 (4th Cir. 1979); *North Georgia Bldg. & Constr. Trades Council v. Goldschmidt,* 621 F.2d 697, 707–08 (5th Cir.1980), the court does not read 32 C.F.R. § 18.704.4 as bestowing finality to the contracting officer's approval of an additional classification when he agrees with the classification request submitted by the contractor. In *Nello L. Teer Co. v. United States,* the Court of Claims makes it clear in its analysis that it is the Secretary of Labor that determines whether a class of laborers are covered in his wage determination decision. 172 Ct.Cl. 255, 265, 348 F.2d 533, 538–39 (1965), *cert. denied,* 383 U.S. 934, 86 S.Ct. 1065, 15

L.Ed.2d 852 (1966). Certainly, therefore, if the contracting officer and the contractor are in agreement that a class is not covered by the Secretary's wage classification decision, and the contractor ostensibly is entitled to seek an additional classification under 32 C.F.R. § 18–704.4, the Secretary of Labor would still maintain the right to perform an independent investigation to ensure compliance with the wage classification *he* promulgated to apply to a government contract. *See Gilbert Engineering Corp. v. United States,* 82 Ct.Cl. 616, 624–26 (1936); *Fry Bros. Corp. v. Department of Housing and Urban Development,* 77 LC (CCH) ¶ 33,306 (D.N.M.1975), ·*aff'd,* 614 F.2d 732 (10th Cir.1980). In this connection, the court notes the Reorganization Plan No. 14 of 1950 governing the Davis-Bacon Act that requires:

> "In order to assure coordination of administration and consistency of enforcement of the labor standards provisions of [the Davis-Bacon Act] by the Federal agencies responsible for the administration thereof, the Secretary of Labor shall prescribe appropriate standards, regulations, and procedures, which shall be observed by these agencies, and *cause to be made by the Department of Labor such investigations,* with respect to compliance with and enforcement of such labor standards, *as he deems desirable,* * * *." (Emphasis added.)

Reorg. Plan No. 14 of 1950, 15 Fed.Reg. 3176 (1950), *reprinted in* 5 U.S.C.S. § 903 app. at 68 (Law.Co-op.1980).

Based on the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Plaintiff's complaint shall therefore be dismissed by the Clerk.

IT IS SO ORDERED.

---

7. With respect to plaintiff's fifth amendment argument, it is sufficient to say that this court has recognized that the due process clause of the fifth amendment does not *ipso facto* obligate the federal government to pay money damages. *Mack v. United States,* 225 Ct.Cl. 187, 192, 635 F.2d 828, 832 (1980), *cert. denied,* 451 U.S. 913, 101 S.Ct., 1988, 68 L.Ed.2d 304 (1981).