# UNITED STATES *v.* BINGHAMTON CONSTRUCTION CO., INC.

No. 65.   Argued December 1, 1953.—Decided March 8, 1954.

*Assistant Attorney General Burger* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Paul A. Sweeney* and *Hubert H. Margolies.*

*Jerome Beaudrias* argued the cause for respondent. With him on the brief was *Malcolm A. MacIntyre.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case is before us on writ of certiorari to the Court of Claims. The question presented is whether the schedule of minimum wage rates included in a Government construction contract, as required by the Davis-Bacon Act,[1] is a representation or warranty as to the prevailing wage rates in the contract area. We hold that it is not.

The Davis-Bacon Act requires that the wages of workmen on a Government construction project shall be "not less" than the "minimum wages" specified in a schedule furnished by the Secretary of Labor. The schedule "shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing" for corresponding work on similar projects in the area.[2] The Act also pro-

---

[1] Act of March 3, 1931, c. 411, § 1, 46 Stat. 1494, as amended by the Act of August 30, 1935, c. 825, 49 Stat. 1011, 40 U. S. C. §§ 276a–276a–5.

[2] 49 Stat. 1011, 40 U. S. C. § 276a:

". . . That the advertised specifications for every contract in excess of $2,000, to which the United States or the District of Columbia is a party, for construction, . . . of public buildings or public works of the United States . . . which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of

vides for penalties, including termination of the contract, if it is found that the contractor is paying less than the schedule rate.[3]

The respondent, a construction company, was the successful bidder for a Government flood control project on the Chemung River at Elmira, New York. On January 31, 1941, at the request of the Corps of Engineers, the Secretary of Labor submitted a schedule of minimum wages for the project. This schedule set the minimum hourly wage rate at $1.00 for carpenters and $.50 for laborers. On March 29, 1941, the Corps of Engineers issued an invitation for bids.[4] Pursuant to the Davis-Bacon Act, *supra,* the Secretary's wage schedule was included in the contract specifications furnished to respondent, prior to the computation of its bid.[5] On May 14,

---

the State in which the work is to be performed . . . ; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work . . . the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications . . . ."

[3] 49 Stat. 1011, 40 U. S. C. § 276a–1.

[4] The invitation provided in part:

*"Investigation of Conditions.*—Bidders are expected to visit the locality of the work and to make their own estimates of the facilities needed, the difficulties attending the execution of the proposed contract, including local conditions, availability of labor, uncertainties of weather, and other contingencies. In no case will the Government assume any responsibility whatever for any interpretation, deduction, or conclusion drawn from the examination of the site. . . . Failure to acquaint himself with all available information concerning these conditions will not relieve the successful bidder of responsibility for estimating the difficulties and costs of successfully performing the complete work."

[5] The specifications contained the following provision:

*"1–31. Wage and Labor Provisions.* (a) The Secretary of Labor has determined the minimum wage rates applicable in the locality

1941, respondent's bid of $232,669.30 was accepted and a written contract was executed, incorporating the specifications and subject only to formal approval by the Government. The contract provided that respondent was to pay wages "not less than those stated in the specifications . . ."; for breach of this provision, the Government was authorized to terminate the contract.[6] On June 3, 1941, the contract was formally approved; and on June 5, 1941, respondent received notice to proceed with the work.

On October 22, 1940, the local carpenters' union had notified the contracting officer that the hourly wage scale for carpenters would be increased from $1.00 to $1.125 as of January 1, 1941. On March 4, 1941, some three

for the labor classifications anticipated to be used on the work. In accordance with Article 17 of the contract, employees at the site shall be paid not less than these wages as listed below:

| "Designation | Wage rate—hourly |
|---|---|
| Carpenters, Journeymen | $1.00 |
| . | . |
| Laborers, unskilled | 0.50 |
| Laborers, Concrete Puddlers | 0.50" |

[6] Article 17 of the contract reads in part as follows:

"(a) The contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work . . . the full amounts accrued at time of payment, computed at wage rates not less than those stated in the specifications . . . .

"(b) In the event it is found by the contracting officer that any laborer or mechanic employed by the contractor or any subcontractor directly on the site of the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required by the contract to be paid as aforesaid, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been a failure to pay said required wages and prosecute the work to completion by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess costs occasioned the Government thereby."

weeks prior to the invitation for bids on the project involved here, the Secretary of Labor had furnished another Government agency, the Federal Works Agency, a schedule of minimum wages for inclusion in the specifications for a federal housing project in Elmira. This schedule set the minimum hourly wage rate at $1.125 for carpenters and $.55 for laborers. On April 1, 1941, the union hourly rate for laborers was increased from $.55 to $.625.

In the performance of the contract, respondent paid the union rates then in effect—$1.125 for carpenters and $.625 for laborers. On June 16, 1941, respondent protested to the contracting officer that it was unable to obtain workmen at the rates specified in the contract schedule and demanded an adjustment of compensation, on the theory that the schedule was an affirmative representation as to the prevailing wage rates in the area and that respondent was entitled to rely on this representation in the computation of its bid. The contracting officer denied relief and the Chief of Engineers dismissed respondent's appeal.[7]

Respondent thereupon brought this action in the Court of Claims, seeking damages for the alleged misrepresentation as well as other relief. The court specifically found that an investigation by respondent would have revealed that the prevailing rates were higher than the rates speci-

---

[7] The Chief of Engineers advised respondent: "There is no authority in law for this office to question the correctness of any determination made by the Secretary of Labor pursuant to the provisions of the above cited act [the Davis-Bacon Act]." Later, in refusing to reconsider respondent's appeal, the Chief of Engineers stated: ". . . The contract by Article 17 and by paragraph 1–31 of the specifications provides that wages not less than those specified shall be paid. The contract makes no representation as to the availability of labor nor as to the actual wage scales that would be in effect. The alleged increased costs did not result from your contract obligation but from economic conditions which are ordinary contingencies contemplated under the terms of the contract."

fied in the schedule.[8] Nevertheless, it allowed respondent a recovery of $7,363.22, consisting of the difference between the rates specified in the contract schedule ($1.00 for carpenters and $.50 for laborers) and the rates specified in the Secretary of Labor's determination for the Federal Works Agency ($1.125 for carpenters and $.55 for laborers).[9] The court held that the contract schedule misrepresented—although inadvertently—the prevailing wage rate in the Elmira area, since, prior to the invitation to bid, the Secretary of Labor had made a higher determination and the contracting officer could have ascertained that fact. Respondent, the court held, was entitled to rely on the schedule "as the Secretary's *latest* determination—as a representation of the wages it would have to pay when the work was to be done."[10] We granted review[11] because of the obvious importance of the decision in the administration of the Davis-Bacon Act.

The Act itself confers no litigable rights on a bidder for a Government construction contract.[12] The language

---

[8] 123 Ct. Cl. 804, 810–811, 107 F. Supp. 712, 716:

"If plaintiff's president had investigated wage rates, he could have ascertained that the prevailing rate for carpenters was $1.125 per hour, and that the prevailing rate for unskilled labor was $.55 per hour, with an advance to $.625 per hour, effective as of April 1, 1941. Also, before inviting bids on this project, the District Engineer could have ascertained that the Secretary of Labor had made a new determination of the prevailing wage rates for Elmira on March 4, 1941."

[9] On all other claims of respondent, the Court of Claims denied recovery. That part of the court's judgment is the subject of respondent's petition for writ of certiorari in No. 78, this Term. [Certiorari denied, *post*, p. 926.]

[10] 123 Ct. Cl. 804, 836–837, 107 F. Supp. 712, 731, relying on *Albert & Harrison, Inc.* v. *United States*, 107 Ct. Cl. 292, 308–309, 68 F. Supp. 732, 734, cert. denied, 331 U. S. 810.

[11] 346 U. S. 809.

[12] Compare 49 Stat. 1011, 40 U. S. C. § 276a–2 (b), conferring a right of action on employees to recover from the contractor the amount due the employees under the minimum wage schedule.

of the Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects.[13] Congress sought to accomplish this result by directing the Secretary of Labor to determine, on the basis of prevailing rates in the locality, the appropriate minimum wages for each project. The correctness of the Secretary's determination is not open to attack on judicial review.[14]

The Court of Claims nevertheless awarded respondent damages on the ground that the Government, through the Corps of Engineers, had falsely represented the prevailing rates in the Elmira area. The short answer to this is that the Government made no such representation. Neither the contract nor the specifications refers to "prevailing" rates. The contract speaks only of "wage rates not less than those stated in the specifications." [15] The specifications in turn speak only of "minimum wage rates applicable in the locality." [16] The only reference to "prevailing" rates appears in the statute itself, which provides that the minimum wage rates are to be "based upon . . . the wages . . . determined by the Secretary of Labor to be prevailing." But this provision in the Act cannot convert

---

[13] *United States* v. *Morley Const. Co.*, 98 F. 2d 781, 788, cert. denied, 305 U. S. 651; *Gillioz* v. *Webb*, 99 F. 2d 585; *Winn-Senter Const. Co.* v. *United States*, 110 Ct. Cl. 34, 61, 75 F. Supp. 255, 257–258; cf. *Perkins* v. *Lukens Steel Co.*, 310 U. S. 113, 128; *Endicott Johnson Corp.* v. *Perkins*, 317 U. S. 501, 507. See also H. R. Rep. No. 1756, 74th Cong., 1st Sess.; S. Rep. No. 1155, 74th Cong., 1st Sess.; S. Rep. No. 1445, 71st Cong., 3d Sess.

[14] *Alliance Const. Co.* v. *United States*, 79 Ct. Cl. 730. Cf., concerning the related Walsh-Healey Public Contracts Act, *Perkins* v. *Lukens Steel Co.*, 310 U. S. 113, and *Endicott Johnson Corp.* v. *Perkins*, 317 U. S. 501.

[15] See note 6, *supra*.

[16] See note 5, *supra*.

the contractor's obligation to pay not less than the minimum into a Government representation that the contractor will not have to pay more. On its face, the Act is a minimum wage law designed for the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirement that the contractor pay "not less" than the specified minima presupposes the possibility that the contractor may have to pay higher rates. Under these circumstances, even assuming a representation by the Government as to the prevailing rate, respondent's reliance on the representation in computing its bid cannot be said to have been justified.

The Government further contends that the Secretary of Labor was justified in fixing different minimum rates for the housing and flood control projects according to the degree of skill required by each project, and that respondent is estopped to claim misrepresentation because of its failure to make an investigation of labor costs before submitting its bid. Because of our disposition of the case, we find it unnecessary to reach these issues. The portion of the judgment on which the Government sought review is

*Reversed.*