Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2007        Decided November 23, 2007

No. 06-5305

ABHE & SVOBODA, INC.
APPELLANT

v.

ELAINE CHAO, SECRETARY,
UNITED STATES DEPARTMENT OF LABOR,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01973)

———

*Maurice Baskin* argued the cause and filed the briefs for appellant.

*Thomas R. Davies* was on the brief for amicus curiae Associated Builders and Contractors, Inc. in support of appellant.

*Benton G. Peterson*, Assistant U.S. Attorney, argued the

cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE and ROGERS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal concerns four challenges by a government contractor to the withholding of contract payment for violation of the Davis-Bacon Act, 40 U.S.C. § 3141 et seq. Although the court lacks subject matter jurisdiction to review challenges to the correctness of the Secretary of Labor's wage determinations under the Act, *see United States v. Binghamton Constr. Co.*, 347 U.S. 171, 177 (1954), we are aligned with our sister circuits in holding that we have jurisdiction to review procedural challenges. We hold, upon *de novo* review, that the district court correctly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) the contractor's claims of estoppel, failure to follow Department regulations, and denial of due process by failing to give fair consideration to the contractor's challenges to the job classification determination. However, because the court lacks subject matter jurisdiction over the contractor's claim that a limited area practice survey was not supported by substantial evidence, we dismiss that claim pursuant to Federal Rule of Civil Procedure 12(b)(1). We affirm the grant of summary judgment to the Secretary on the contractor's claim that the Department violated due process by failing to give fair notice of the requirement to abide by local practices regarding job classifications. Although the Secretary's wage determination did not expressly so state, administrative and judicial decisions and the Act itself provided adequate notice to the Company, particularly in light of Department regulations affording a means

of obtaining clarification of wage determinations and the job classifications that they require.

**I.**

The Davis-Bacon Act is "a minimum wage law designed for the benefit of construction workers," *Binghamton*, 347 U.S. at 178, "'protect[ing] local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area,'" *Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 773 (1981) (quoting H. COMM. ON EDUC. & LABOR, 87TH CONG., LEGISLATIVE HISTORY OF THE DAVIS-BACON ACT 1 (Comm. Print 1962)). The Act requires that covered contractors pay employees "minimum wages . . . based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed . . . ." 40 U.S.C. § 3142(b). The Federal-Aid Highway Act, which authorized the highway projects at issue, provides that employees "shall be paid wages at rates not less than those prevailing on the same type of work on similar construction in the immediate locality as determined by the Secretary of Labor" under the Davis-Bacon Act. 23 U.S.C. § 113(a).

Pursuant to the Department's regulations, *see* 29 C.F.R. pts. 1, 5, 7, the function of issuing wage determinations is delegated to the Administrator of the Wage and Hour Division. *Id.* § 1.1(a). The Administrator typically promulgates general wage determinations at the county level, *id.* § 1.7(a), determining local prevailing wages based, for example, on survey data of actual wages paid or local collective bargaining agreements, *see* 40 U.S.C. § 3142(b); 29 C.F.R. § 1.3(b). A government agency, including a State highway department, 29 C.F.R. § 1.2(d), need

not notify the Department before incorporating a general wage determination into bid solicitations for a federally funded project so long as "questions concerning its use shall be referred to the Department of Labor . . . ." *Id.* § 1.5(a). While the wage determinations may not include detailed information about the duties covered by each job classification, the Department's regulations provide that "[a]ll questions relating to the application and interpretation of wage determinations (including the classifications therein) . . . shall be referred to the Administrator for appropriate ruling or interpretation." *Id.* § 5.13; *see also Univs. Research Ass'n*, 450 U.S. at 760-61.

Abhe & Svoboda, Inc. is a construction company primarily engaged in the repair of large infrastructure, like bridges and dams. In 1993 and 1994, the Company was the winning bidder on three bridge repainting projects sponsored by the State of Connecticut Department of Transportation ("CTDOT"). Because the projects involved federal funding, CTDOT provided the Company with a copy of general wage determinations that listed applicable wages for all classifications of workers for "Building Construction Projects" and "Heavy and Highway Construction Projects" in the relevant counties. Under these general wage determinations, the wages for painters, laborers, and carpenters were each based on union collective bargaining agreements; the relevant unions were noted in the wage determinations by their initials.[1] At least three of the wage determinations provided to the Company expressly noted that an "'SU' designation [not used for carpenters, laborers, or painters

_____

[1] For instance, the general wage determination includes the initials PAIN0011C to indicate that wages for "Painters (Bridge Construction)" were based on the wages established in a collective bargaining agreement signed by District Council 11 of the International Brotherhood of Painters and Allied Trades. *See* Decl. of William Gross ¶ 6.

classifications] means that rates listed under that identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing." Further, the Company does not contest that the wage determinations indicated that they were based on collective bargaining agreements. Upon winning the bid, the Company made inquiries of several other contractors about the job classifications they had used on similar projects but made no effort to contact the relevant unions noted in the wage determinations. Based on these inquiries, its "nationwide experience," and its own "tools of the trade" analysis, the Company determined that its employees functioned as painters, laborers, and carpenters depending on the duties they performed and paid them accordingly at different wage rates.

In 1996, the Wage and Hour Division began an investigation of the Company's classification practices, conducting a "limited area practice survey" in accordance with the "Field Operations Handbook" to determine the practice of the union signatories to the collective bargaining agreements that were the source of the wages included in the general wage determinations. *See* Wage & Hour Division, *Field Operations Handbook*, ch. 15, § 15f05 (1990), *available at* www.dol.gov/esa/whd/foh.[2] The Division contacted the unions

---

[2] Chapter 15, § 15f05(c)(2) of the *Field Operations Handbook* provides in pertinent part that:

> If the applicable [wage determination] reflects union rates for the classifications involved, the unions whose jurisdiction the work may be within should be contacted to determine whether the respective union performed the work in question on similar projects in the county in the period one year prior to the beginning of construction of the project at issue. If so, each union should be asked how the individuals

that represented the painters, laborers, and carpenters, as well as the President of the Connecticut Construction Industries Association. All agreed that the painters union claimed all work performed on bridge painting projects. The Administrator found that this was the area practice and, therefore, that the Company had misclassified its employees when it had paid some of them as laborers and carpenters. As the prime contractor, the Company was subject to the withholding of contractual payments of $1.3 million. *See* 40 U.S.C. § 3142(c)(3).

The Company requested review of the Administrator's findings, *see* 29 C.F.R. § 5.11(2), and, after a forty-nine day hearing, an administrative law judge ("ALJ") agreed that the Company had misclassified its employees and rejected the Company's argument that the Department was equitably estopped from seeking back wages. The Company appealed to the Administrative Review Board ("ARB"), which upon *de novo* review, *see* 5 U.S.C. § 557(b), affirmed the ALJ's decision. In the course of a 30-page discussion, the ARB rejected the Company's arguments that the ALJ's decision should be set aside because he had adopted the findings and conclusions of the Administrator's post-hearing brief virtually verbatim, and that the Department had failed to provide adequate notice that all employees on the bridge painting projects should be paid as

who performed that work were classified. . . . In addition, the information provided by the unions should be confirmed with collective bargaining representatives of management (e.g., contractors' associations such as local chapters of the Associated General Contractors of America . . . ). If all parties agree as to the proper classification for the work in question, the area practice is established.

painters. The Company then sued the Secretary in federal district court, alleging that the Department: (1) was estopped from applying its wage determination regarding the scope of the painters classification because CTDOT had approved of the Company's practice; (2) had violated the Company's due process right to fair consideration by affirming ALJ findings that adopted the findings in the Administrator's post-hearing brief; (3) had failed to provide fair notice of the requirement that the Company classify its employees according to union practice; and (4) had conducted the limited area practice survey in an arbitrary and capricious manner by failing to include non-union contractors and by making findings that were not supported by substantial evidence. The district court dismissed the claims pursuant to Rule 12(b)(6) for failure to state a claim except for the fair-notice claim, on which it granted summary judgment for the Secretary. The Company appeals.

## II.

As a threshold matter, the Secretary contends that under *Binghamton*, the court lacks subject matter jurisdiction over the three claims that were dismissed by the district court. While not analyzing the issue as one of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court ruled that *Binghamton* disallows three of the Company's claims because the complaint made a "substantive demand for relief," seeking to have the court order the Secretary to release $1.3 million in withheld payments. We agree with the Secretary that the *Binghamton* bar should be analyzed through the lens of subject matter jurisdiction, *see Mistick PBT v. Chao*, 440 F.3d 503, 505 (D.C. Cir. 2006), and hold that the court has subject matter jurisdiction over the Company's procedural claims, notwithstanding the type of relief sought.

Consistent with the grant of jurisdiction to federal courts

over claims "arising under" federal law, 28 U.S.C. § 1331, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (quoting *Rusk v. Cort*, 369 U.S. 367, 379-380 (1962)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). The Davis-Bacon Act provides that the minimum wages federal contractors pay their employees "shall be based on the wages the Secretary of Labor determines to be prevailing . . . ." 40 U.S.C. § 3142(b). In *Binghamton*, the Supreme Court held that Congress intended the Act to preclude judicial review of wage determinations, stating that the Act "direct[s] the Secretary of Labor to determine, on the basis of prevailing rates in the locality, the appropriate minimum wages for each project. The correctness of the Secretary's determination is not open to attack on judicial review." 347 U.S. at 177.

In light of the "clear and convincing evidence" requirement of *Abbott Laboratories*, the *Binghamton* bar should be narrowly drawn to shield only the substance of wage determinations from judicial review, the contents of which the Act entrusts to the Secretary alone. This court has held that under *Binghamton* the court retains subject matter jurisdiction over Department regulations interpreting the scope of the Davis-Bacon Act, *see Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447 (D.C. Cir. 1994), and the Department's application of its conformance procedures, *see Mistick*, 440 F.3d 503. We now join our sister circuits in holding that *Binghamton* does not limit the court's jurisdiction over procedural challenges to wage determinations themselves. *See N. Ga. Bldg. & Constr. Trades Council v. Goldschmidt*, 621 F.2d 697, 707-08 (5th Cir. 1980); *Fry Brothers Corp. v. HUD*, 614 F.2d 732, 733 (10th Cir. 1980) (per curiam); *Virginia ex rel. Comm'r, Dep't of Transp. v. Marshall*, 599 F.2d 588, 592 (4th Cir. 1979). We hold that the court has

subject matter jurisdiction over the Company's estoppel claim because it does not challenge the correctness of the Department's determination of the local practice of classifying the duties of painters but rather whether that determination can be applied in light of the Company's asserted reliance on CTDOT approval of its practice. Likewise, the court has jurisdiction over the Company's Administrative Procedure Act ("APA") claim that the Wage and Hour Division failed to follow Department regulations in conducting the limited area practice survey and its two due process claims that the Department failed to provide fair consideration of the Company's arguments or fair notice of the job classifications. The fact that the Company seeks release of the $1.3 million withheld from its contract payment does not convert these procedural claims into a substantive attack on the wage determinations; not only does the complaint seek "any such other and further relief as [the] Court deems proper," but a prayer for substantive relief does not automatically transform a claim challenging procedure into one challenging substance. *Cf. Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328-29 (1995).

However, we hold that the court lacks subject matter jurisdiction over the Company's claim that the findings in the limited area practice survey that determined the locally prevailing practice of classifying jobs are not supported by substantial evidence because this represents a challenge to the substantive correctness of the Secretary's wage determinations. Wage determinations implicitly include the locally prevailing practice of classifying jobs. *See Fry Brothers*, 614 F.2d at 733-34; *Framlau Corp. v. Dembling*, 360 F. Supp. 806, 809 (E.D. Pa. 1973); *cf. United States ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Constr. Co.*, 183 F.3d 1088, 1093-94 (9th Cir. 1999). Where collective bargaining agreements form the basis of wage determinations, the practice of local signatory unions is conclusive under Department precedent. *See Fry*

*Brothers Corp.*, WAB Case No. 76-6, 1977 WL 14823 at *6 (1977); *see also Field Operations Handbook*, ch. 15, § 15f02. Thus, the challenge to the substance of the Secretary's determination of the proper job classifications of the Company's employees runs afoul of the *Binghamton* bar and must be dismissed pursuant to Rule 12(b)(1).

## III.

Turning to the merits of the Company's claims over which the court has jurisdiction, this court reviews *de novo* both the dismissal of a claim pursuant to Rule 12(b)(6) and the grant of summary judgment. *See Wilson v. Pena*, 79 F.3d 154, 160 n.1 (D.C. Cir. 1996). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). Three of the Company's claims can be readily rejected for failure to state a claim; only its claim involving fair notice requires extended discussion.

The Company's estoppel claim is that CTDOT "officials followed a deliberate course of conduct, on which [the Company] . . . relied, by affirmatively stating that various workers on the projects were properly classified as laborers and/or carpenters." Compl. ¶ 24. Even assuming principles of equitable estoppel could be applied against the federal government as an affirmative claim, *see Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984); *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111-13 (D.C. Cir. 1988), the alleged independent actions of a state government agency fail to demonstrate "affirmative misconduct" by the federal government, *Heckler*, 467 U.S. at 67 (Rehnquist, J., concurring) (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973)). Therefore, this

claim was properly dismissed pursuant to Rule 12(b)(6). The Company's claim that the ARB violated its due process rights by affirming an ALJ decision that adopted the findings and conclusions of the Administrator's post-hearing brief is contrary to relevant precedent, *see, e.g.*, *United States v. El Paso Nat'l Gas Co.*, 376 U.S. 651, 656 (1964), and ignores the fact that it is the ARB's decision, which reviewed the ALJ's decision *de novo* and discussed each of the Company's arguments, that is before the court. A Rule 12(b)(6) dismissal of this claim was therefore also appropriate. And in claiming that it was arbitrary and capricious and contrary to Department regulations to rely on an area practice survey limited to one segment of the industry, the Company cannot deny that, under Department precedent, where a wage determination is based on a collective bargaining agreement, the proper classification of employees is determined exclusively by the practices of the signatory unions. *See Fry Brothers*, WAB Case No. 76-6; *Field Operations Handbook*, ch. 15, § 15f05(c)(2). The Company neither identifies a regulation to the contrary nor disputes that the relevant wage determinations indicate that the wages for carpenters, laborers, and painters were based on collective bargaining agreements. The wage determinations are "public records subject to judicial notice on a motion to dismiss." *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Because they rely on collective bargaining agreements, only the practice of the signatory unions was relevant to the Department's investigation, and therefore this claim was properly dismissed pursuant to Rule 12(b)(6).

The Company's fair notice claim is not so readily disposed of. Because the general wage determinations did not indicate the proper method of classifying employees, the Company contends that the Department failed to provide fair notice that it had to pay its employees at the painter's wage, rather than the carpenter or laborer wage, or that it had a legal obligation to base its job classifications on locally prevailing union practice.

The Company maintains that the Department's application of an unstated requirement violates the Due Process Clause under which a regulation must provide "fair warning of the conduct it prohibits or requires" before "penal sanctions" can be applied. *Gates & Fox Co. v. OSHA*, 790 F.2d 154, 156 (D.C. Cir. 1986); *see Satellite Broad. Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987). As the court observed in *General Electric*, "[i]n the absence of notice — for example, where the regulation is not sufficiently clear to warn a party about what is expected of it — an agency may not deprive a party of property by imposing civil or criminal liability." 53 F.3d at 1328-29. However, the fact that the wage determination did not itself explain that the Company had to base its job classification on the practice of the relevant unions does not end the inquiry. "[P]arties dealing with the government 'are expected to know the law,'" *ATC Petroleum*, 860 F.2d at 1111 (quoting *Heckler*, 467 U.S. at 63), and "there is no grave injustice in holding parties to a reasonable knowledge of the law," *id.* at 1112. Existing administrative and judicial decisions and the Davis-Bacon Act itself put the Company on fair notice of what was required.

The first source of notice to the Company is the decision by the Wage Appeals Board ("WAB"), the predecessor to the ARB, in *Fry Brothers*. While this case is not officially published, its inclusion in a commercial reporter and its treatment in subsequent judicial and administrative cases provide adequate notice that contractors must use the job classifications of signatory unions when wage determinations are based on collective bargaining agreements. In *Fry Brothers*, WAB Case No. 76-6, at *6, the WAB explained:

> If a construction contractor who is not bound by the classifications of work at which the majority of employees in the area are working is free to classify or reclassify, grade or subgrade traditional craft work as

> he wishes, such a contractor can, with respect to wage rates, take almost any job away from the group of contractors and the employees who work for them who have established the locality wage standard. There will be little left to the Davis-Bacon Act. Under the circumstances that the Assistant Secretary determined that the wage determinations that had been issued reflected the prevailing wage in the organized sector it does not make any difference at all what the practice may have been for those contractors who do and pay what they wish.

The WAB therefore found that the contractor had misclassified its workers by failing to follow the practice of the local unions. *Id.* at \*5.

*Fry Brothers* was included in *Labor Law Reports*, a weekly newsletter published by Commerce Clearing House that identifies new developments in labor law. *See* CCH Online Store, http://onlinestore.cch.com (follow "Business and Corporate" hyperlink; then follow "Employment Law" hyperlink). It was subsequently upheld by the Tenth Circuit, 614 F.2d 732, which does not fully explain the WAB's decision, but does indicate that *Fry Brothers* involved a dispute about the "wage scale required for a certain group of workers," *id.* at 732, thus providing public notice of the relevance of this decision to the determination of job classifications. Further, the relevant portion of *Fry Brothers* was quoted at length in *Building & Construction Trades' Department v. Donovan*, 543 F. Supp. 1282, 1285 (D.D.C. 1982).[3] The same passage was again quoted

---

[3] The passage quoted is:

> If a construction contractor who is not bound by the classifications of work at which the majority of

in *Tele-Sentry Security, Inc. v. Secretary of Labor*, No. 90-0912, 1991 WL 178135, at \*4 (D.D.C. Aug. 30, 1991), an unpublished decision that was included in *Labor Law Reports*, 119 Lab. Cas. P. 35,534, and *Government Contracts Reports*, 37 Cont. Cas. Fed. P. 76,166. Additionally, the Department has incorporated the principle of *Fry Brothers* into Chapter 15, § 15f05(c)(2) of its publically available *Field Operations Handbook*. *See also id.* at ch. 15, § 15f05(b). *Fry Brothers* was also frequently relied on by the WAB prior to 1993, including in four opinions in 1991 and 1992, the two years immediately prior to the Company's submission of its bids.[4] As a Company admittedly engaged in hundreds of government contracts requiring Davis-Bacon Act compliance, it follows that the Company should have known about the requirement first enunciated in *Fry Brothers* and incorporated into a broad array of administrative and judicial decisions.

The Davis-Bacon Act also should have alerted the Company to the fact that it could not apply its own methodology of

---

> employees in the area are working is free to classify or reclassify, grade or subgrade traditional craft work as he wishes, such a contractor can, with respect to wage rates, take almost any job away from the group of contractors and the employees who work for them who have established the locality wage standard. There will be little left of the Davis-Bacon Act.

543 F. Supp. at 1285.

[4] *Miller Insulation Co*., WAB Case No. 91-38, 1992 WL 515931, at \*5 (Dec. 30, 1992); *Iron Workers II*, WAB Case No. 90-26, 1992 WL 465692, \*2-6 (Mar. 20, 1992); *More Drywall, Inc*., WAB Case No. 90-20, 1991 WL 494732, at \*1-2 (Apr. 29, 1991); *Van Den Heuvel Elect., Inc.*, WAB Case No. 91-03, 1991 WL 523862, at \*3 (Feb. 13, 1991) (Rothman, Senior Member, dissenting).

classifying jobs. From start to finish, the focus of the Act is on local practice. The Act protects the wages "prevailing on the same type of work on similar construction in the immediate locality . . . ." 23 U.S.C. § 113(a). Long before the contracts at issue, the court invalidated Department regulations that permitted employers to use job classifications that deviated from those locally prevailing. *See Bldg. & Constr. Trades' Dep't v. Donovan*, 712 F.2d 611, 624 (D.C. Cir. 1983). The Company's inquiries of other contractors indicate that it knew that local practice was relevant to classifying its employees. However, the Company did not fulfill its obligations. As the ARB observed:

> [a]lthough [the Company president] professed to be fully conversant with [Davis-Bacon and related statutes], wage determinations and the concept of prevailing wages, . . . he failed to accept the actual governing principle in [Davis-Bacon and related statutes] classification cases: the rate to be paid for particular tasks is the rate found to be prevailing in the locality for that work, regardless of which tools the workers were using.

The Company's position that it has a right to apply its own job classifications based on a national "tools of the trade" analysis, on which it claimed to have relied in over 500 government contract jobs across the country, *see* Appellant's Br. at 10-11, is inconsistent with the fundamental principle of the Davis-Bacon Act that local practice should control government contracts. The Department's regulations further underscore that contractors do not have the authority to determine the scope of job classifications based on their own methodologies, providing a means for contractors to obtain clarification from the Department about the proper scope of jobs under wage determinations. 29 C.F.R. § 5.13; *see also Univs. Research Ass'n*, 450 U.S. at 760-61.

In the face of *Fry Brothers* and its progeny, and the purpose of the Davis-Bacon Act, the Company urges the court to construe *Fry Brothers* narrowly to require only that contractors abide by known union practices. Here, the relevant union signatories were noted in the wage determinations and although the Department might have provided more explicit guidance that would have further forestalled a fair notice challenge, a company engaged in work subject to the Davis-Bacon Act cannot reasonably ignore the obvious. The Company offers no explanation for not contacting the relevant unions or inquiring of the Department if it was unclear about the local practices for classifying jobs. In any event, the discussion in *Fry Brothers* and the principle that underlies it do not suggest that federal contractors may exercise less than a reasonable effort to determine the practice of signatory unions when wage determinations are based on collective bargaining agreements. Whatever might be the legal effect where a signatory union stonewalls an inquiring federal contractor, the Company made no effort to ascertain the practices of the unions noted in the wage determination. The objection by amicus Associated Builders & Contractors, Inc. that the Department places too onerous a burden on federal contractors because "they cannot break through the union wall to adequately and clearly determine their invariably unwritten practices and rules," Amicus Br. at 13, therefore rings hollow and ignores the administrative channel for clarification provided by the Department's regulations in 29 C.F.R. § 5.13.

Accordingly, we affirm the grant of summary judgment to the Secretary on the fair notice claim and we affirm the judgment of dismissal pursuant to Rule 12(b)(6) of the other claims except for the substantial evidence challenge, which we dismiss pursuant to Rule 12(b)(1).